[Civ. No. 3819. First Appellate District, Division Two.—July 21, 1921.]

LONDON GUARANTEE & ACCIDENT CO., LTD. (a Corporation), Respondent, v. SOUTHERN PACIFIC COMPANY (a Corporation), Appellant.

[1] Negligence—Death of Operator of Crane in Gravel-pit—Collision With Gravel Train—Doctrine of Last Clear Chance—Evidence—Instructions.—In this action for damages for the death of the brakeman in charge of a crane in a gravel-pit caused as the result of a collision of a gravel train operated by a railroad company with the car on which the crane was mounted, the doctrine of last clear chance was involved and the court did not err in its instructions on such issue.

APPEAL from a judgment of the Superior Court of Alameda County. William H. Waste, Judge. Affirmed.

The facts are stated in the opinion of the court.

A. A. Moore, Stanley Moore and Ford & Johnson for Appellant.

Walter H. Linforth and E. Nusbaumer for Respondent.

STURTEVANT, J.—On the twelfth day of April, 1916, one Frank Rodrigues met injuries resulting in his death during the course of his employment by the Niles Sand, Gravel & Rock Company. Plaintiff was the insurance carrier of the employer of the deceased, and under the terms of the Workmen's Compensation, Insurance and Safety Act [Stats. 1917, p. 831], being subrogated to the rights of the heirs at law of Rodrigues, brought this action for damages, alleging that through the negligent operation of one of its trains the defendant was responsible for the death of the deceased. A verdict was arrived at in plaintiff's favor, and it is from the resultant judgment that this appeal was taken.

The Niles Sand, Gravel & Rock Company, at the time of the accident in question, maintained a gravel-pit in the bed of Niles Creek. In this pit were three railroad tracks, two being commonly known as industrial spur-tracks and one the main-track of the defendant. The tracks were so

constructed that cars could be switched from one to the other. The main-track approached the gravel-pit on a descending grade of about one per cent and on a curve of about nine degrees. All of the tracks were maintained by the defendant. In the course of its operations the gravel company used a crane to load cars in the pit. This crane was operated by a steam engine mounted on something similar to a flat car. It had two trucks under it, and it could be moved by its own power. Its engine-house extended approximately fourteen feet above the tracks. The top of the crane at ordinary slant was about thirty feet above the track. At the time of the accident the crane, together with one gondola car, were located on the main-track. The engine operating the crane had steam up and the crane had been in position and at work for a few hours. At the time of the accident the deceased was on the ground on the opposite side of the crane from which the defendant's train approached. At the corner of the platform of the crane on the same end of the •car was the brake on the crane. That brake was an appliance consisting of a wheel set horizontally and which could be operated only by using a bar. To operate the same most effectively the operator should stand on the ground astride of one of the rails. The deceased was the brakeman in charge. No witnesses observed the position of the deceased immediately before the impact.

At the time of the accident one of the defendant's trains, consisting of an engine and six loaded gravel cars, proceeded down the track toward the pit. The fireman was handling the throttle while being seated in the engineer's place and the engineer was seated in the fireman's place. The air-brakes of the train were disconnected. There was the testimony of two or more witnesses to the effect that the location of the crane could be seen from a point opposite the water-tank about 400 feet up the track.

When the gravel train arrived at the pit the train struck the gondola car attached to the crane, shoving both of them forward 72 feet, and upon examination it was found that the deceased had been run over by the front wheels of the front truck. The appellant does not claim that the defendant was not negligent, but contends: First: That the last clear chance doctrine under the pleadings and under the proof had no place in the record. Second: That the in-

structions that were given on the doctrine of the last clear chance were in themselves erroneous statements of the law. Third: That the evidence as a matter of law shows the deceased to have been guilty of contributory negligence. Fourth: Error in the admission of certain evidence relative to notice from the defendant not to use the main-track.

[1]   On the appeal the defendant does not even claim that it was not negligent. It contends with much earnestness that the deceased was guilty of contributory negligence. In the face of these two propositions it is patent that we are very close to the usual contention that the doctrine of last clear chance is involved. And when we consider certain other facts which were developed on the trial, and which are stated below, it becomes manifest that the plaintiff, at least, had the right to have the jury instructed on the doctrine of last clear chance. Some of those reasons will appear as we proceed, but, considering the whole record, we think that it was altogether proper that the court instructed on that doctrine.

The second contention, that the instructions given on the doctrine of last clear chance were in themselves erroneous, is without foundation. It is fundamental law that the instructions should all be read together. As so read, instructions 13, 14, and 15 were correct and clear expressions of that doctrine. They were as follows:

"Where one has placed himself in a dangerous position, and another has actual knowledge of his dangerous situation, and has a clear opportunity by the exercise of proper care to avoid injuring him, he must do so, notwithstanding the injured person has placed himself in such situation of danger by his own negligence.

"In other words, if you find the decedent, Frank Rodrigues, in working around and about the crane in question, at and immediately prior to the happening of the accident, if you find he was so working around and about said crane, had placed himself in a dangerous position, notwithstanding this fact, if you further find the employees of the defendant, Southern Pacific Co., in charge of the train in question knew of the existence of said crane upon said track and knew of such position of deceased in time, by the exercise of proper care, to have brought said train to a stop and avoid said collision, and did not do so, then I charge you the de-

fendant, Southern Pacific Co., is responsible for the death of the decedent, Frank Rodrigues, and your verdict should be in favor of the plaintiff.

"Even though you find that the Niles Sand, Gravel & Rock Company had no right to have its crane upon the track in question, and that by doing so it and its employee, the decedent, Frank Rodrigues, was guilty of negligence in so doing, then I charge you if the defendant, Southern Pacific Co., in the operation of its train in question, knew of the existence of the crane upon the track in question in time to have stopped and avoided the collision, and had the last clear opportunity of avoiding the accident, and if by the use of reasonable care, after its employees observed the said crane upon the said track, it could have brought its train to a standstill in time to avoid the collision in question, and did not do so, it is solely responsible for the accident and the consequent death of the decedent, Frank Rodrigues, provided you find that without negligence on his part, at the time of the accident in question, he was at a place where, in the discharge of his duties as brakeman of the Niles Sand, Gravel & Rock Company, he was required to be, and under these facts, if you so find, your verdict should be against the defendant, Southern Pacific Co., and in favor of the plaintiff.

"If the engineer and fireman, or either of them, in charge of the train in question, knew of the existence of the said crane upon said track, and by the use and exercise of proper care could have brought the said train to a stop in time to have avoided colliding with and striking said crane, or the gondola car on the rear thereof, and therefore had a last clear opportunity of avoiding the collision in question, and did not do so, then it matters not whether the said crane was rightfully or wrongfully upon said track, and your verdict should be against the defendant, Southern Pacific Co., and in favor of the plaintiff, provided you find that at the time of the accident Frank Rodrigues was at place where his duties as employee of the Niles Sand, Gravel & Rock Company required him to be, and that solely by reason of the said collision the said decedent, Frank Rodrigues, sustained injuries which resulted in his death."

The appellant's third contention is that the evidence, as a matter of law, shows the deceased had been guilty of con-

tributary negligence. This contention is founded on the fact that the employer of the deceased had furnished the crew of the crane with red flags, and that the duty of placing the flags had been imposed on the decedent. The plan was that a red flag should be placed between the railroad rails several hundred feet distant from the crane and between it and any approaching train. At the time of the accident the decedent had failed so to place the flags. This fact was a fact which with other facts might be considered by the jury as showing contributory negligence, but the omission, of itself, did not constitute contributory negligence as a matter of law.

The witness Duffy had stated that he had worked at the pit as shipping clerk for the gravel company. He stated that during the years he was there the gravel company used all three of the tracks daily. On certain occasions while they were using the tracks the defendant's train came in. "Q. Did you ever hear any objection made by anyone connected with that train crew to the use of the outer tracks by the Niles Sand & Gravel Company? Mr. Ford: I object to it as incompetent, irrelevant, and immaterial, not a matter which the train crew could consent to, or give the Niles Sand & Gravel Company any right by its consent or otherwise. The Court: The objection is overruled. A. No, sir." Had the witness made a different answer the answer might have been prejudicial but the particular answer given by the witness at the most can merely be said to be immaterial. There are probably several thousand people not called who would have given the same answer, but such answers would lead nowhere. The slightest consent or the slightest objection on the part of an officer of the defendant, having authority to speak on the subject, of course, would be otherwise. The superintendent saw the crane using the outer track and made no objection.

Appellant's brief contains a great deal which goes to the sufficiency of the evidence to sustain the verdict of the jury as based on the doctrine of last clear chance. It will be noted that the appellant's points as stated by them, and as quoted above, hardly present that question, however their record on appeal does present the question. The appellant contends with much vigor that the record does not show that the defendant's trainmen actually saw the deceased in

a place of danger. That may be true, however the record does show: that the crane was in a place where it could be seen 500 feet up the track; that the steam was issuing from the top of the pipe leading from the engine; and that the fireman who was operating the engine realized that the crane was in his way when he was at the switch 450 feet from the crane. He testified that he had the straight air on and the emergency air when he was 250 feet away. He also testified that the train was under his control at all times. In view of these facts it cannot be said that there was no evidence to support the case of the plaintiff on the doctrine of last clear chance. Furthermore, during the trial of the case, the questions of counsel for the plaintiff and of counsel for the defendant indicate that they both considered that the doctrine of last clear chance was involved in the case and both sides tendered instructions on that theory. The court did not err in instructing the jury on that theory.

We find no error in the record. The judgment is affirmed.

Nourse, J., and Langdon, P. J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on September 19, 1921, and the following opinion then rendered thereon:

THE COURT.—The application for a hearing in this court after decision by the district court of appeal of the first appellate district, division two, is denied.

In view of the circumstances of this case, as shown by the evidence, we think that there was no substantial error in the instructions on the issue of the last clear chance. In other words, we are of the opinion that under such circumstances actual knowledge of the position of the crane imputed knowledge of the presence of such employees as were engaged thereon.

Angellotti, C. J., Shurtleff, J., Lawlor, J., Sloane, J., and Lennon, J., concurred.

Wilbur, J., dissented from order denying application.