[S. F. No. 11290. In Bank.—October 29, 1926.]

HUGO ERIC HOY (a Minor), by ANTHONY G. HOY, His Guardian Ad Litem, Respondent, v. P. P. TOR-NICH, Appellant.

[1] NEGLIGENCE—INJURIES FROM AUTOMOBILE—SUFFICIENCY OF EVI-DENCE.—In this action for damages for injuries alleged to have been caused by defendant's negligent operation of an automobile, it is held that the evidence was sufficient to support the verdict and judgment.

[2] ID.—CONTRIBUTORY NEGLIGENCE—PLEADING—EVIDENCE.—In an action for damages for negligence, where the evidence introduced by the plaintiff shows that he has been guilty of contributory

---

2. See 19 Cal. Jur. 681; 20 R. C. L. 182.

negligence, the defense may be availed of, even though not set up by the defendant.

[3] Id.—Last Clear Chance—Liability of Defendant.—In an action for damages alleged to have occurred through the negligence of the defendant, the fact that the plaintiff was negligent will not defeat his action, where the defendant had a clear chance to avoid the accident.

[4] Id.—Instructions—Exercise of Care.—In such an action, where the court instructed the jury at the plaintiff's request that plaintiff had a right to assume that all other persons using the highway would exercise ordinary care to prevent injury to others, to which objection was made that one who is himself negligent is not entitled to so assume, it is held that the other instructions given at the request of the defendant removed any prejudicial effect of said instruction.

[5] Id.—Doctrine of Last Clear Chance—Applicability of.—In an action for damages for negligence, the doctrine of last clear chance applies equally to the case of where the plaintiff is wholly unaware of the danger and for that reason unable to escape it as to the case of being in a position of danger from which he cannot escape by the exercise of ordinary care.

[6] Id.—Conduct of Child—Care Required.—In determining the reasonableness of a child's conduct his capacity as well as his age must be considered.

[7] Id.—Future Damages—Instructions.—In such a case the use of the phrase "likely to be sustained," in instructing the jury on the elements to be considered in estimating damages to be awarded for future suffering, while not well chosen, is not prejudicially erroneous where in the latter part of the instruction, in which the measure of damages was given, it was stated that if plaintiff *"is reasonably certain* to endure mental suffering and humiliation in the future" such amount as will reasonably compensate him therefor may be awarded; and the word "feel" in such instruction, advising the jury that it is at liberty to make such amount "as you feel" will reasonably compensate plaintiff, must be construed as meaning the same as "believe" and not as authorizing the jury to indulge in speculation and conjecture.

---

(1) 28 Cyc., p. 47, n. 20.   (2) 29 Cyc., p. 581, n. 4.   (3) 28 Cyc., p. 38, n. 27.   (4) 28 Cyc., p. 49, n. 49; 38 Cyc., p. 1785, n. 89, p. 1786, n. 97.   (5) 4 C. J., p. 1029, n. 30; 29 Cyc., p. 530, n. 15. (6) 28 Cyc., p. 49, n. 49; 29 Cyc., p. 536, n. 56; 38 Cyc., p. 1778, n. 73, p. 1779, n. 75, 76.   (7) 17 C. J., p. 1066, n. 19, p. 1077, n. 16.

3.   See 19 Cal. Jur. 651; 20 R. C. L. 138.
5.   See 19 Cal. Jur. 654.
6.   See 19 Cal. Jur. 605; 20 R. C. L. 38.

APPEAL from a judgment of the Superior Court of Alameda County. Mortimer Smith, Judge. Affirmed.

The facts are stated in the opinion of the court.

Ford, Johnson & Bourquin and Philip M. Carey for Respondent.

Chickering & Gregory for Appellant.

FINCH, J., *pro tem.*—This is an appeal by the defendant from a judgment against him for damages alleged to have been caused by his negligent operation of an automobile. The answer denied that the defendant was negligent and, as a separate defense, alleged that the plaintiff's injuries were "proximately caused by the negligence of said Hugo Eric Hoy in this, that . . . said Hugo Eric Hoy carelessly and negligently ran directly in front of the said automobile . . . and . . . carelessly and negligently failed and neglected to avoid said accident and said injuries."

At a point on the highway between Livermore and Altamont, where the ground is level and the road straight, the defendant's automobile, a five-passenger Briscoe touring car, struck the plaintiff on the right side of the head, causing the injuries of which complaint is made. The paved part of the highway is sixteen feet wide. The defendant was traveling easterly along the south half of the pavement and, immediately before striking the plaintiff, he met and passed a truck going in the opposite direction along the north half of the pavement. The plaintiff, who was then of the age of six years and three weeks, and three other children were walking home from school in a westerly direction along the northerly half of the highway, near the pavement but not upon it. The truck passed the children and the plaintiff thereupon turned to the left, his home being on the south side of the highway. When partly across the pavement he was struck by the defendant's automobile. The children's teacher had warned them against walking on the pavement except when it became necessary to cross it.

One of the children, a boy of the age of ten years at the time of the accident, testified: "I was walking on the gravel. All of the four children were walking along there also. . . .

There were no children hanging on to a truck. They had
not touched a truck. I remember a truck that went by the
place of the accident shortly before the accident happened.
It was a milk truck. It was filled with large milk cans.
The truck overtook us as we were going along there. . . .
Q. After the truck had passed by you did Hugo Hoy start
to cross over on to the cement portion of the road? A. Yes.
Q. Did you see him right in front of you doing that?
A. Yes. . . . I noticed his automobile coming from the di-
rection of Livermore at the time the Hoy boy started to
cross, and when I saw the automobile I called to Hugo. The
first time I called he did not pay any attention to me. He
did not give me any indication that he had heard me. I
called to him again, and he turned his face around to look
at me and stopped. . . . At the time I first shouted to
Hugo Hoy I could plainly see the automobile which finally
struck him. When Hugo Hoy stopped after I shouted at
him the second time, he was in the middle of the highway.
The automobile was about 25 feet away. . . . I saw the
machine coming all the time. The truck did not interfere
with my view of the machine at all. All the four children
were right there in plain sight. . . . Q. How far was it do
you think, when you first saw it (defendant's automobile)
coming, about? A. About 125 feet. . . . No one but Hugo
stepped on the paved road. He went straight across the
road. . . . From the time he stepped on the highway until
he got hit by this automobile, Hugo did not look in the
direction of Livermore at all. He was looking straight
ahead as he was walking until I called out to him, when he
turned around and looked at me, and he was still turned
around looking towards me when the machine hit him. He
was standing still. He had come to a stop. . . . I saw the
automobile coming down the road on the right side. It did
not swerve to the right nor to the left before the collision.
It kept in a straight line, and then after the collision it
swerved to the right.'' A witness for defendant testified:
''I was in company with Mr. Tornich on the day of this
accident. I was sitting on the right hand side of the ma-
chine. . . . As we passed the truck just about, I would not
state as a statement of fact, but not more than 25 feet I
spied the boy on the road coming towards the machine look-
ing in the opposite way. It occurred to me that the boy

was moving, but I could not tell whether he was moving because I could not see his feet. I called out, 'O, boy!', not to attract the driver but to call the attention of the boy. Our machine at that time went to our right towards the fence. . . . I think the machine was going from 20 to 25 miles an hour. . . . When we passed the truck we were far over to our right, about 6 inches from the gravel. To the best of my knowledge this collision took place about 25 feet after we passed the truck." The defendant testified: "My automobile did not strike the Hoy boy. . . . He ran on my machine. . . . When the accident happened it was about three o'clock. . . . Ordinarily I drive about 20 or 25 miles an hour. That would be the speed I intended to continue. . . . I am sure I never went over 25 miles. . . . At the time the accident happened the road was clear and there was not much traffic. It was level. . . . The brakes were in perfect condition. . . . Going about 20 or 25 miles an hour, I can stop that machine in about 10 or 15 feet. It is a straight highway from Livermore to Altamont. . . . When I drive I look straight ahead. . . . As we came up to the scene of the accident, prior to the accident, we passed a truck coming in an opposite direction. . . . The truck was going about 10 or 15 miles an hour. . . . Before this accident I did not see school children walking along the road. . . . I passed the truck maybe a foot, no more, when the boy ran into my machine. . . . My partner that was on the seat said, 'See the boy,' and I looked out and the boy was going on the side, like that, and with his head jumped on my fender. . . . The space between the truck and my machine was about three or four feet. . . . The boy was going sideways facing the road. . . . If the boy had kept still I could have run past him, but he kept going and bumped into my machine. . . . When I first saw him he was not an inch from me. . . . When I first saw the boy opposite the front wheel, I grasped the machine and turned it as fast as I could on the right hand side. I increased the speed and turned to my right. . . . Maybe the boy was hit before I turned. . . . I did not blow my horn. . . . I could not see nobody behind the truck. I looked in front of me. . . . There is no law to look to the left when you are driving a machine. . . .My partner saw the boy before I did . . . and called out to me, I turned my head to the left for the first time, and there was

the boy. . . . I slowed up when I saw the big truck passing me. I was going 20 or 25. . . . I took my foot off the gas. The machine went very slowly. When I got to the end of the truck I put my foot on the gas again. . . . After I got to the truck . . . I kept my eyes forward right on the path, so I did not look to the right or the left. . . . I looked straight ahead.''

The plaintiff was rendered unconscious by the impact of the fender against the side of his head and remained in that condition for three days. The attending physician testified that in his opinion ''there was a severe tearing, or laceration of the brain tissue'' and a fracture of the skull and that the injury ''is very likely to be permanent.'' Another physician, who examined the plaintiff about a week before the trial, which was commenced about eighteen months after the accident, testified that he found marked evidence of inco-ordination, or ataxia; that ''arrested mental development . . . would be a natural sequence to an injury which resulted in a laceration of the brain. That kind of condition would be permanent. In a case like this, I do not think you can look for very much improvement. . . . In my opinion, this boy will never be able to obtain an education. It is also my opinion that he will either be a ward of the state or else he could do light work, a watchman, for instance, or doing chores around the house or some of those things.'' Another physician, who was called as a witness by defendant, testified that he found nothing to indicate a brain injury; that while the plaintiff ''might be considered as somewhat retarded, he would not be considered as feeble or demented, and there is no indication that he would not develop mentally''; that he ''did not find any evidence of inco-ordination''; that in his opinion the ability of plaintiff ''to make his way in the world after he is twenty-one years of age is that it will be good.'' The plaintiff was out of school for about two months after the accident, but he attended school regularly after his return thereto until the time of the trial. His teacher testified that he was the brightest pupil in his class prior to the injury; that ''he was very quick to grasp his work,'' but that ''he is not any further advanced today in his studies since coming back after the accident. No progress at all. I have worked with him alone, giving him special help, but

it is without effect.'' The jury awarded damages in the sum of $12,500.

[1] The evidence is clearly sufficient to support the verdict and judgment. The defendant testified that he was looking straight ahead prior to the accident, except when he looked to the left as he approached the truck. Therefore, he must have seen the children both before and after the truck had passed them, and since both machines were traveling much faster than the children, the period of time during which the truck obstructed his view of them must have been very brief. The divergence of the lateral boundary lines of the field of vision is such that if the defendant was looking directly ahead along the straight and narrow road he must have seen the children walking along the strip of gravel adjacent to the pavement. The testimony is to the effect that the plaintiff did not run across the pavement. ''He was walking. I could not say how fast. Not too fast and not too slow, just about right.'' Taking into consideration the slowness of the plaintiff's movement across the pavement as compared with the speed of the truck, it is clear that the truck had gone forward a sufficient distance to afford the defendant an unobstructed view of the plaintiff before the latter arrived at the point where he was struck, that point being at least nine or ten feet from the place where he turned to cross the pavement. Viewed in the light of common experience, the defendant's own testimony shows that he was negligent. This is not a case of a child darting suddenly in front of a moving vehicle from a hidden place, but of running into a child on an open highway. If the plaintiff were of mature judgment and mental capacity it would be inferred from the uncontradicted evidence, introduced by the plaintiff, that he was guilty of contributory negligence in attempting to cross the pavement without looking for approaching vehicles. Respondent contends that the defendant did not plead contributory negligence as a defense. [2] But where the evidence introduced by the plaintiff shows that he has been guilty of contributory negligence, ''the defense may be availed of, even though not set up by defendant.'' (19 Cal. Jur. 681.) [3] If it be conceded that the plaintiff was negligent, still it appears that the defendant had a clear chance to avoid the accident. The defendant testified that

he could have stopped his machine "in about 10 or 15 feet" and that he was looking straight ahead. The evidence shows that the boy was standing on the pavement with his face turned away from the approaching machine. The only reasonable inference from the evidence is that he was unaware of the machine's approach. Looking straight ahead, the defendant must have seen the boy in the road and that his face was turned away from the defendant. By the exercise of ordinary care the defendant could have avoided the accident by turning to the right or by stopping his machine.

[4] The instructions are lengthy and contain many repetitions and a number of errors, several of them favorable to the defendant. Appellant contends that certain instructions given at the plaintiff's request are prejudicially erroneous. One of them states that the plaintiff "had a right to assume that all other persons using the highway . . . would exercise ordinary care to prevent injury to others." The objection is that one who is himself negligent is not entitled to so assume. (19 Cal. Jur. 596; *Carroll* v. *Central Counties Gas Co.*, 70 Cal. App. 303 [240 Pac. 53]. At defendant's request the court instructed the jury, without qualification, that the defendant "had a right to assume that persons upon the highway would exercise ordinary care and that they would not negligently expose themselves to danger, and that they would exercise ordinary care to ascertain the approach of motor vehicles, and before you hold that the defendant was negligent in this case, you must take into consideration these assumptions which defendant had a right to rely on." In other instructions the court stated that the plaintiff could not recover if both parties were negligent, or if he "heedlessly ran in front of the automobile"; that "even though plaintiff in this case was a minor, he cannot hold the defendant responsible for any result to which plaintiff's carelessness contributed"; and that it was the duty of the plaintiff to look in both directions for approaching machines. The instructions so given at defendant's request must be presumed to have removed any prejudicial effect of the instruction of which complaint is made. Another of such instructions reads as follows:

"If you find from the evidence that the child was guilty of negligence in placing himself on the road, or in the path of the approaching automobile, but you further find that

the defendant, Tornich, discovered the position of the child and after he discovered the danger of the child, he realized and was aware of said danger of the child, and had a clear opportunity by the exercise of ordinary care to stop his car thereafter, or otherwise prevent the accident, but was negligent in not doing so, then the injured child's negligence was not the proximate cause of the accident, but such later negligence of the defendant, if any, was the proximate cause of the injury to the child, and under such circumstances your verdict must be for the plaintiff, but the last act of negligence must be disassociated from and not co-operating with the contributory negligence of the injured party.''

[5] Appellant contends that the uncontradicted evidence shows that he did not see the plaintiff until the very moment of the accident and that therefore the doctrine of the last clear chance is inapplicable. In the discussion of a similar contention, in *Wahlgren* v. *Market Street Ry. Co.*, 132 Cal. 656, 665 [62 Pac. 308, 310], it is said: ''We think counsel had a right to argue to the jury that the employees were interested witnesses, and though they both testified that they did not see plaintiff before her injury, yet, there being no obstruction to the view, the conductor must have seen her from where he was at the switch before the car passed him, if he was looking for approaching pedestrians, as his testimony would seem to imply.'' If the defendant in this case was looking straight ahead, as he testified that he was, he must have seen the plaintiff. The instruction omits the qualification that the plaintiff must have been in a position of danger from which he could not escape by the exercise of ordinary care. (*Darling* v. *Pacific Electric Ry.*, 197 Cal. 702 [242 Pac. 703, 706].) The doctrine applies equally if the plaintiff be wholly unaware of the danger and for that reason unable to escape it. (*Darling* v. *Pacific Electric Ry.*, *supra; Palmer* v. *Tschudy*, 191 Cal. 696, 700 [218 Pac. 36].) The only reasonable inference from the evidence is that the plaintiff was wholly unaware of the danger and that it was apparent to the defendant that such was the fact. The defect in the instruction, therefore, cannot be considered prejudicial.

At the plaintiff's request, the court instructed the jury that it was incumbent upon him to exercise ''the care and prudence applying to children of the same age of plaintiff'';

the "degree of care that would be expected from children of the same age, or which children of that age ordinarily exercise"; and that his conduct was to be judged "by what a child of similar years and understanding would be likely to do under like circumstances." [6] In determining the reasonableness of a child's conduct, his capacity as well as his age must be considered. At defendant's request the court stated to the jury that "children, as well as adults, should use the prudence and discretion which persons of their years ordinarily have," and, in the latter part of the same instruction, that it is their duty to exercise such "care to avoid danger as may reasonably and fairly be expected from persons of their age and capacity." Other instructions given at the plaintiff's request stated in substance that he was held to the exercise of such care as may reasonably be expected from persons of his age and capacity. The instructions must be considered together and it is not believed that the jury could have been misled by the inaccurate statements to be found in the instructions of both parties. [7] Objection is made to the use of the word "likely" in one of the instructions quoted. In the sense in which the word was used it is synonymous with the word "probable." Children will likely do or probably do in a given case what they ordinarily do under similar circumstances. The court gave several instructions upon the measure of damages, among them the following:

"One element of damage which you may consider, if your verdict is for the plaintiff, is the mental suffering and humiliation, if any, sustained, or with reasonable certainty *likely to be sustained* in the future by the plaintiff as a result of the injury suffered by him, and in this connection if you find for the plaintiff, and believe that he has suffered as a result of the alleged injury, mental suffering, humiliation, and is reasonably certain to endure mental suffering and humiliation in the future, then you are at liberty to make such amount as you *feel* will reasonably compensate him for such suffering and humiliation, if any not exceeding the amount prayed for in the complaint."

Objection is made that there is no evidence of mental suffering and humiliation. A mere reference to the evidence herein quoted is deemed a sufficient answer to that contention. Exception is taken to the use of the words

herein italicized. It must be conceded that such words are not well chosen, but, while in stating the elements to be considered in estimating damages to be awarded for future suffering, the phrase ''likely to be sustained'' by the plaintiff is used, in the latter part of the instruction, where the measure of damages is given, it is stated that if he ''is *reasonably certain* to endure mental suffering and humiliation in the future'' such amount as will reasonably compensate him therefor may be awarded. This latter statement of the law is correct. (*Wiley* v. *Young,* 178 Cal. 681, 687 [174 Pac. 316].) The word ''feel'' was doubtless used by the court and understood by the jury as meaning the same as the word ''believe,'' and not as authorizing the jury to indulge in speculation and conjecture. Other instructions make the matter clear. At the defendant's request the court instructed the jury as follows: ''If you should decide to find a verdict in favor of the plaintiff in this case, then in determining the amount of said verdict and assessment of damages, you are not to indulge in speculation, nor should you be swayed by sympathy or prejudice. You should be controlled wholly by the evidence and the law. . . . In making up your verdict, you can only find such actual damages as may be proved by the evidence.''

Appellant complains of numerous other instructions given by the court. It would unduly lengthen this opinion to give specific consideration to them all. They have been carefully examined and it is believed that there is no prejudicial error in any of them.

While, as stated, there are errors disclosed by the record, a consideration of the whole case, including the extreme youth of the plaintiff, leads to the conclusion that the errors complained of have not resulted in a miscarriage of justice.

The judgment is affirmed.

Waste, C. J., Richards, J., Shenk, J., and Curtis, J., concurred.