[Civ. No. 6511. First Appellate District, Division One.—January 8, 1929.]

ERNEST GALWEY, a Minor, etc., Respondent, v. PACIFIC AUTO STAGES, INC., Appellant.

J. Hampton Hoge for Appellant.

Louis Oneal, Maurice J. Rankin, and S. F. Holstein for Respondent.

THE COURT.—This action was brought by Ernest Galwey, a minor, through Hannah Galwey, his mother and guardian *ad litem*, to recover damages from appellant corporation for personal injuries. A jury returned a verdict for the plaintiff, and from the judgment entered thereon the corporation has appealed.

It is claimed that the verdict is unsupported and that the court erred in its rulings upon the admissibility of certain testimony, and its instructions to the jury, and by refusing other instructions offered by appellant.

The accident which caused the injuries occurred at about 8:30 o'clock P. M. on August 2, 1925, at a point on Lincoln Street, between Benton and Franklin Streets, in the city of Santa Clara. At this point Lincoln Street runs north and south and the cross-streets mentioned east and west. The plaintiff was aged about eleven years and was skating or walking upon roller skates at the time of the accident. According to his testimony, he left his home, which was situated to the east of Lincoln Street, and skated west along the sidewalk on Franklin Street to Lincoln; thence north along the east side of Lincoln to a point where the sidewalk ended, and from there walked to the corner of Benton Street. The width of Lincoln Street between the curbs is 49 feet, a strip in the center 20 feet in width being paved. After reaching the corner the plaintiff turned west to cross Lincoln Street and stepped from the curb into the unpaved strip east of the paved portion of the street. Before attempting to cross the pavement he looked to the north and south. A car approaching from the south passed him, and he saw the lights of another car coming from the north. While plaintiff did not so testify, the circumstances fairly support the in-

ference that the latter car was the stage operated by appellant. This car was then distant from one-half to three-fourths of the length of the block, the block referred to being that between Benton and Fremont Streets, to the north, which was shown to be 310 feet in length. Believing that he had time to cross in safety, he made the attempt, and when he had passed over the paved portion and reached the unpaved strip along the west side of Lincoln Street he was struck and injured by the automobile stage. Plaintiff was unable to describe in detail the manner in which the accident happened other than as stated above, but denied that he stumbled and fell in front of the stage, as testified by certain of appellant's witnesses, or that he stepped from behind another car immediately into the path of the stage, as testified by others. The plaintiff's leg was crushed in such a manner as to make an amputation necessary. Although no bones were broken a description of the injuries by a physician in attendance immediately after the accident, and who testified that earth and gravel were ground into the wounds made by the wheels of the stage, tends to support the conclusion that the collision occurred after the plaintiff had reached the unpaved strip adjoining the westerly curb of the street. The driver of the stage testified that the accident happened about 110 feet south of Benton Street; that the plaintiff suddenly appeared from behind a car traveling north, being, when first seen, from 8 to 10 feet distant; that the speed of the stage from Benton Street south was from 12 to 15 miles an hour, and that the plaintiff when in front of the stage stumbled and fell under the wheels. His testimony in the above respects was corroborated by several witnesses called by appellant. He also testified that he applied the foot and emergency brakes when about 8 feet from the plaintiff, and that the stage, which was 23 feet in length, traveled from 25 to 30 feet before stopping. It further appears from his testimony that it was dusk but not dark at the time; that his lights were such that he could see a distance of 150 feet; that the brakes of the stage were in good condition, and that the nearest car in front and traveling in the same direction was from 50 to 75 feet away. According to a witness for the plaintiff, the latter, after the collision, was lying near the west curb of the street about two stage lengths south of the property

line on Benton Street and about 2 feet north of the rear of the stage. The witness also testified that the wheels of the stage were then entirely off and to the west of the paved portion of the street. Whether the plaintiff was thrown or carried for any distance by the stage is not disclosed in the evidence, none of the witnesses having observed the effect of the collision in this respect. If, however, the testimony of the plaintiff as to the point where he attempted to cross the street was true, namely, at the corner of Benton Street, then it is clear that he was carried for at least 2 stage lengths, as shown by the testimony of his witness as to where he was found.

Appellant contends that the evidence shows that its driver was not negligent. While the greater number of witnesses testified for appellant, and their testimony, if believed by the jury, would have been sufficient to establish this contention, nevertheless from the testimony of the plaintiff as to the place where he attempted to cross the street and his precautions in looking for approaching vehicles before the attempt was made, together with that of the witness who testified as to where he was found after the collision, a jury might reasonably find that the accident occurred at the place claimed by the plaintiff; that the latter used due care for his own safety, and that the driver—who testified that the stage stopped over 100 feet south of the intersection, and also that at a speed of fifteen miles per hour it could have been stopped within 40 feet—was either driving at a greater speed than he admitted, or that he failed to apply the brakes at the time and place claimed by him. Neither a pedestrian nor an automobile has a superior right on the highway, and the conduct of both must be regulated by this rule (*Burgesser* v. *Bullock's*, 190 Cal. 673 [214 Pac. 649]) ; and where a pedestrian looks for approaching vehicles before proceeding, and sees none which appear to be dangerously close, the question whether he was negligent in attempting to cross, under the rule that he is bound to use ordinary care for his own safety, must be determined by a consideration of all the attending circumstances (*Reaugh* v. *Cudahy Packing Co.*, 189 Cal. 335 [208 Pac. 125] ; *Mann* v. *Scott*, 180 Cal. 550 [182 Pac. 281]) ; and in the present case this question, with that as to whether the driver of the stage complied with the provisions of the

Vehicle Act requiring the operators of motor vehicles to drive the same in a careful and prudent manner and at a rate of speed not greater than is reasonable and proper, having due regard to the traffic, surface and width of the highway, were for the jury, and under the evidence were properly submitted for its determination (*Burgesser* v. *Bullock's, supra; Reaugh* v. *Cudahy Packing Co., supra; Mardorf* v. *Penniman,* 68 Cal. App. 696 [230 Pac. 12]).

The court instructed the jury that if it found from the evidence that the place where the accident occurred was in a residence district, then the defendant was required to drive its stage at a speed not exceeding 20 miles per hour in that district; and that if it found that defendant drove its stage at a speed in excess of 20 miles per hour it was guilty of negligence, and if such negligence was the proximate cause of the injuries received by the plaintiff it was its duty to find for him. Appellant contends that there was no evidence that the place of the accident was within a residence district within the meaning of the Vehicle Act (Stats. 1923, p. 554], and that the instruction was conseqently erroneous.

A residence district was defined by the Vehicle Act as "the territory contiguous to a public highway which is on the line of said highway not mainly devoted to business, where for not less than a quarter of a mile the dwelling houses and business structures on such highway average less than 100 feet apart"; further, that "no territory shall be deemed to be within a business or residence district unless sign-posted as provided in this act"; and section 116 of the same act provided that "the board of supervisors of any county, and the city council, board of trustees, or other legislative body of a city or town wherein any public highway lies within a residence district, shall cause metal signs to be conspicuously placed on every such highway at the boundary lines of such residence district, etc., . . . ," the size and color of the signs being described, and further providing that the same be inscribed with the words "20 miles speed limit." As stated by appellant, no direct evidence as to the character of the district where the accident happened was adduced. It was, however, stipulated by the parties that the board of trustees of the city of Santa Clara had by an ordinance duly adopted ordered that signs of the above description be erected on the street mentioned, and that pursuant thereto such signs were placed. In addition it

was testified that a sign of the character described was in place to the north of the scene of the accident at the time the same occurred. It was the duty of the trustees of the city, if the highway lay within a residence district, to cause the signs mentioned to be erected; and it being presumed that official duty has been regularly performed (Code Civ. Proc. 1963, subd. 15), there was thus evidence sufficient to justify the submission of the question of the character of the district to the jury.

By another instruction the jury was instructed with regard to the duty of appellant to operate its stage with due regard for the safety of pedestrians, and was told that if it found from a preponderance of the evidence that the defendant was guilty of negligence which proximately caused the injuries to the plaintiff it must find for him, provided it also found that he was free from negligence. Later in the same instruction the first proposition was repeated, the qualification respecting plaintiff's freedom from negligence not being referred to again. Appellant claims that this was misleading, but with this contention we cannot agree, as the jury, there and elsewhere in the instructions, was fully advised that unless the plaintiff's conduct was free from negligence contributing to the injury he could not recover.

Appellant also complains that by instruction 7 the court stated that the plaintiff in crossing the street was "chargeable only for the exercise of a due amount of care," without defining what was meant by a due amount of care. Any defect in this respect, however, was fully cured by instructions 11 and 27, by which the jury was instructed as to the degree of care required of children of the age of the plaintiff, and further, that if it found that he failed to exercise the care of an ordinary prudent person of his age, acting under like circumstances, and that his failure to do so proximately contributed to the accident and his resulting injuries, if any, then he could not recover.

Two instructions on the doctrine of the last clear chance were given. Appellant complains that there was no evidence in the case which would justify these instructions, and further, that the same were faulty in that the jury was not told that before the doctrine could apply it must find that the plaintiff was oblivious to the impending peril, or in a position of danger from which by the exercise of ordinary care he could not extricate himself.

These instructions were brief but correct statements of the last clear chance rule, and followed similar instructions approved in the following cases: *Esrey* v. *Southern Pacific Co.*, 103 Cal. 545 [27 Pac. 500]; *Ilardi* v. *Central Cal. Traction Co.*, 36 Cal. App. 489 [172 Pac. 763]; *London G. & A. Co.* v. *Southern Pac. Co.*, 53 Cal. App. 599 [200 Pac. 805]. In *Townsend* v. *Butterfield*, 168 Cal. 564 [143 Pac. 760], referring to a like instruction, the court said: "If the defendant desired a fuller and more elaborate instruction on the doctrine of last clear chance it was his duty to prepare and present the same to the court, or in some way make known to the court the lack of a clear instruction and his desire for a better definition of the rule." While the driver testified that he applied the brakes and swerved the stage to the right immediately upon perceiving the dangerous position of the plaintiff, nevertheless the evidence justified the giving of this instruction. The lights of the stage were such that the driver could see 150 feet in advance, and this, in connection with his testimony as to the speed of the stage, and the time required to stop after the application of the brakes, were facts from which the jury might infer that, contrary to his testimony, he did see the perilous position of the plaintiff at a time when he could, by the exercise of ordinary care, have avoided the accident (*Wahlgren* v. *Market St. Ry. Co.*, 132 Cal. 657, 665 [62 Pac. 308, 64 Pac. 993]; *Hoy* v. *Tornich*, 199 Cal. 545 [250 Pac. 565]; *Varcoe* v. *Lee*, 180 Cal. 338 [181 Pac. 223]; *Chappell* v. *San Diego etc. Ry. Co.*, 201 Cal. 560 [258 Pac. 73]).

Appellant further complains of an instruction in which was stated the rule as to the care required of one placed in sudden peril and following which the court said: "I instruct you that in this case, if you find from the evidence that the plaintiff was suddenly put in peril without having sufficient time to consider all the circumstances, he is excusable for omitting some precaution or making an unwise choice under this disturbing influence; and I instruct you that if he acted as a reasonably prudent boy of his age would have acted under the circumstances which were then presented to him he is not guilty of contributory negligence, and is not responsible for the accident." It is contended that the instruction ignored the question whether the plaintiff's position of peril was due to his own negligence. As an

abstract proposition the statement of the rule contained in the first portion of the instruction was correct (*Randolph* v. *Hunt*, 41 Cal. App. 739 [183 Pac. 358]) ; and an instruction substantially the same as the quoted portion was approved in *Hammond* v. *Pacific Electric R. R. Co.*, 32 Cal. App. 756 [164 Pac. 50], wherein it was held that the instruction did not purport to say that a person in sudden peril by his own negligence is relieved from the imputation of contributory negligence, but stated the principle that an unwise choice under such peril is not of itself contributory negligence. Moreover, the jury was elsewhere repeatedly told that there could be no recovery against the defendant unless the plaintiff himself was free from contributory negligence.

Certain instructions offered by appellant were refused, one directing a verdict for the defendant, and the other charging that at the place of the accident the maximum limit of speed authorized by law was 35 miles per hour, and a third, that the plaintiff could not recover if guilty of contributory negligence however slight.

There was no error in the above as there was sufficient evidence of negligence on the part of appellant to justify the submission of the case to the jury. Further, the question whether the place of the accident was within a residence district, where the maximum limit of speed was but 20 miles per hour, was likewise one for its determination; and the third instruction so refused was fully covered by others given by the court.

Appellant also objects to an instruction in substance that if the jury found for the plaintiff in damages, then he was also entitled to recover such reasonable expense as he had necessarily incurred for hospital and physicians' services not exceeding the amount alleged in the complaint. It is claimed that the mother of plaintiff was liable for his necessities, including medical attention; that the expense incurred was chargeable to her and could not be recovered in this action.

It is clear that the mother, who appears to have been the only surviving parent of the plaintiff, was not able to pay the expenses and that she made no promise to do so. The services were necessary in order to save the life of the plaintiff, who would be liable for their reasonable value (Civ. Code, sec. 36). Under the circumstances shown they were recoverable in the present action (*Aubel* v. *Sosso*, 72

Cal. App. 57 [236 Pac. 319]; *McManus* v. *Arnold Taxi Co.*, 82 Cal. App. 215 [255 Pac. 755]).

We find no merit in the contention that the trial court erred in its rulings on the admissibility of certain evidence.

The evidence was sufficient to sustain the findings of the jury, and the record discloses no error which would justify a reversal of the judgment.

The judgment is affirmed.

A petition for a rehearing of this cause was denied by the district court of appeal on February 7, 1929, and a petition by appellant to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on March 7, 1929.

All the Justices concurred.