[Civ. No. 14701. Second Dist., Div. Three. May 17, 1945.]

MORRIS YACK, Respondent, v. MARY ELIZABETH TIFFIN, Appellant.

Hunter & Liljestrom for Appellant.

David Schwartz and Morris Kastle for Respondent.

WOOD (Parker), J.—Defendant appeals from a judgment upon a verdict in favor of plaintiff for $1,000 damages resulting from an automobile collision.

The accident occurred about 4 p. m. on January 31, 1943, in the intersection of Santa Monica Boulevard and Edgemont Street, in Los Angeles. Santa Monica Boulevard extends in an easterly and westerly direction, is paved, and is 60 feet wide between curbs. There are two streetcar tracks on Santa Monica Boulevard, the outer rails of which are 18 feet apart, and each outer rail is 21 feet from its nearest curb. Edgemont Street extends north and south, and intersects Santa Monica Boulevard. Edgemont Street is 30 feet wide between curbs north of the intersection and 50 feet wide between curbs south of the intersection. The curb at the northwest corner extends about two feet farther east than the curb at the southwest corner. The curb at the northeast corner extends about 18 feet farther west than the curb at the southeast corner. There is a boulevard stop sign at the northwest corner of the intersection, requiring southbound vehicles on Edgemont Street to stop before entering the intersection, and there is a boulevard stop sign at the southeast corner of the intersection requiring northbound vehicles on Edgemont Street to stop before entering the intersection. A gasoline service station is on the northwest corner of the intersection, and it has driveways opening on both Santa Monica Boulevard and Edgemont Street. At the time of the accident, plaintiff was proceeding east on Santa Monica Boulevard and when he had gone about 11 feet into the intersection, and was about 15 feet north of the south boundary line of the intersection, the right front fender of defendant's automobile and the left front fender of plaintiff's automobile collided. The automobiles interlocked and went about 38 feet in an easterly direction.

Plaintiff testified that he was traveling approximately 25 miles an hour; that as he approached the intersection he looked "all over," and at all four corners; that the only

vehicles he saw were two automobiles which were proceeding west on Santa Monica Boulevard; that he slowed up; that he was about 20 feet from the corner when he looked to the right, about 15 feet from the corner when he looked to the left, and he could see north on Edgemont Street about 200 feet; that he saw defendant about five feet before the impact; that she was traveling in the same direction as plaintiff, and he saw her through his rear view mirror; that his rear view mirror was over his windshield and directly in front of him; and that he did not have time to avoid the accident. A portion of plaintiff's deposition was read at the trial and it included statements that plaintiff did not know what direction defendant came from, and that he was about 10 feet from Edgemont Street when he looked to his right, and about five feet from Edgemont Street when he looked to his left.

A pedestrian, called as a witness by plaintiff, testified that she saw the accident; that she gave her name to plaintiff at the scene of the accident when he asked for witnesses; that she first saw defendant when defendant "made that large turn"; that she first saw defendant when defendant was "half-way" across the tracks, and was starting to make a turn; that defendant turned east; that she (the witness) did not know where defendant "came from"; that defendant was traveling 25 or 26 miles an hour; and that plaintiff was traveling 25 to 30 miles an hour. A map of the intersection was admitted into evidence, and this witness marked thereon the position of defendant's automobile at the time she first saw it prior to the accident. The mark indicated that the automobile was approximately 50 feet west of the intersection, was in a diagonal position facing easterly, with the front portion thereof on the eastbound streetcar track and the rear portion thereof on the westbound streetcar track. A written document, admitted into evidence, which was signed by this witness about eight days after the accident, contained the statement that the witness did not know how fast defendant was traveling.

The husband of said witness, called by plaintiff, testified that he and his wife were together at the time of the accident; that he did not see the accident; that he inspected the area near the scene of the accident, and saw tire tracks which curved toward the service station on the northwest corner of the intersection; and that the tire "tracks followed along the same line as the tires, I mean from the point where the car [defen-

dant's] was at a standstill, you could see the tire tracks all the way along.'' He made marks on the map showing that the tire marks extended from a point on the westbound street-car tracks, about 35 feet west of the intersection, through the point of impact to a point immediately east of the intersection. He testified that the tire marks which curved toward the service station were those of the defendant's automobile. Although that statement by the witness was a conclusion, no objection was made to it. (It will be noted hereinafter that two witnesses called by defendant also stated conclusions, without objection, as to whether tire marks were made by defendant's automobile.)

Two police officers, who arrived at the scene of the accident approximately 10 minutes after the accident, were called as witnesses by defendant. One of them testified that he measured from the point of collision to the place where the automobiles came to rest, and the distance was 38 feet; that he made an investigation of the intersection, including the areas north and west of the intersection; and that there were tire marks which came from the service station but they were faint and old. He further testified, without objection, that the only ''recent'' tire marks in the vicinity extended from the point where the two vehicles collided to the point where they came to rest; and that he examined the area west of the point of impact and there were no marks from either plaintiff's or defendant's automobiles. He testified further that the service station was closed on the day of the accident; that plaintiff's automobile had ''stickers'' on the left side of the windshield; that he did not know what kind of stickers they were, except he did ''know there was a gas sticker and a Federal tax stamp there''; that plaintiff stated to him at the scene of the accident that he thought defendant was traveling in the same direction plaintiff was traveling, and that he did not see defendant until the time they ''came together.''

The other police officer testified that he made an investigation of the scene of the accident; and that he did not examine the area between the driveway of the service station and the point of impact. He further testified, without objection, that he observed tire marks in the intersection caused by plaintiff's and defendant's automobiles which extended from the point of impact to where the automobiles came to rest, and that he observed no other ''fresh tire marks'' at or near the intersection.

■ Defendant contends that plaintiff was guilty of contributory negligence as a matter of law in "failing to look either to the right or left until just before entering the intersection." The evidence shows that plaintiff looked to his right and to his left when he was 15 or 20 feet from the intersection, and at that time he could see about 200 feet north (left) on Edgemont Street. If defendant's automobile was traveling on Edgemont Street, in the manner stated by defendant, then plaintiff was negligent in failing to see it enter the intersection. There was evidence, however, from which the jury might infer that defendant's automobile was not on Edgemont Street immediately preceding the accident, and that it came from the driveway of the service station and turned onto Santa Monica Boulevard west of the intersection. It was therefore a question of fact whether defendant was proceeding on Edgemont Street or on Santa Monica Boulevard immediately before the accident.

■ Defendant also contends that the court erred in giving the jury the following instruction: "A motorist driving upon a through highway at a lawful rate of speed has the right to believe that another motorist approaching the highway from a cross street will obey the law and stop." Her argument is that the instruction was erroneous for the following reasons: that it did not state that the operator of an automobile on a through highway should himself be exercising ordinary care before he would be entitled to assume that an operator of another automobile would obey the law; that it improperly limited the exercise of ordinary care on the part of the operator of an automobile on a through highway to his rate of speed; and that it did not include the necessary qualification that even if the operator of an automobile upon a through highway is himself exercising ordinary care his right to rely upon the assumption that another would obey the law ends when it is reasonably apparent to him, or in the exercise of ordinary care would be apparent to him, that another is not going to perform his duty and obey the law. The instruction was erroneous for the reasons asserted by appellant; however, it was not prejudicial under the circumstances of this case. Immediately preceding that instruction, the following instruction was given: "The fact that one has the right of way, if such be the fact, does not excuse him from the exercise of ordinary care to avoid causing an accident." Immediately following the questioned instruction the

court instructed the jury that: "It is the duty of every person using a public highway, to exercise ordinary care at all times to avoid placing himself or others in danger and to avoid a collision." From a consideration of the evidence it appears probable that the jury found that defendant had not approached the through highway from a cross street but that she had driven from the service station, and had approached plaintiff's automobile diagonally from the rear of his automobile. In the event that such finding was made, of course, the questioned instruction relative to approaching from a cross street would not have been prejudicial. For these reasons the failure to give a more complete instruction does not require a reversal.

Defendant further contends that the court erred in instructing the jury that "no person shall turn a vehicle unless and until such movement can be made with reasonable safety." Her argument is that said instruction has no application to the instant case in that there was no evidence of turning by defendant. As above stated, the jury might have found that defendant entered Santa Monica Boulevard from the service station and that as she so entered the boulevard she made a turn. It was not error to give that instruction.

The judgment is affirmed.

Desmond, P. J., and Shinn, J., concurred.