[Civ. No. 21183.   Second Dist., Div. Two.   Nov. 21, 1955.]

MICHAEL BOGNER, Respondent, v. ISAAC GORDON
EUBANKS et al., Appellants.

Veatch & Thomas and Henry F. Walker for Appellants.

Vaughan & Brandlin and Thomas G. Baggot for Respondent.

ASHBURN, J. pro tem.*—Defendants appeal from a judgment entered upon a jury's verdict in favor of plaintiff in a personal injury action. They do not question the sufficiency of the evidence to support the verdict, nor do they claim excessive damages. But one point is made, error in giving an instruction concerning plaintiff's right to rely upon the exercise of care by another.

---

*Assigned by Chairman of Judicial Council.

The accident occurred at the intersection of Broadway and Slauson in the city of Los Angeles on a sunny afternoon of August 10, 1953. Broadway runs north and south, and Slauson east and west. Slauson had three lanes of traffic in each direction, with the customary double line in the center. Plaintiff alighted from a southbound streetcar on Broadway and went to the northwest corner of the intersection. There were four tri-light signals at that place, one on each corner, and they displayed green, amber and red lights, in the sequence just stated, indicating respectively "Go," "Caution" and "Stop." There was a marked crosswalk, 17 feet wide, on the west side of the intersection running across Slauson. Plaintiff went to the curb on the northwest corner, and according to his testimony started across the street when the signal turned green or "go" for southbound traffic. He said that he was within the crosswalk and that as he stepped from the curb, or just before leaving it, he looked to the east and saw no automobiles at all; that when he got some five steps or 12 feet into the intersection, still being within the crosswalk, and about the center of same, defendants' westbound truck collided with him. He never saw the truck and did not look again to the east after leaving the curb, confining his attention to the green light and three lines of eastbound cars on the south half of Slauson which had stopped for the red light. He has no recollection of the impact and, as stated, does not recall having seen the truck. It does not appear whether there was any other westbound traffic in the vicinity; there may have been one westbound car in the curb lane and near the truck. There were no pedestrians beside plaintiff or in front of him; there were some behind him. In the main, the foregoing constitutes plaintiff's version of the accident.

Defendant Eubanks testified that he was driving a truck with a 5-ton load of sand and cement, going west on Slauson in the center of the middle lane at a speed of about 25 miles per hour; that the signal for traffic on Slauson was green until he got up to the one on the northeast corner; that it turned to amber just as he passed it; that he continued on across the intersection, saw plaintiff as he stepped from the curb, and that the truck was then crossing the west crosswalk; that plaintiff was west of that crosswalk, some 25 to 30 feet west of it; that plaintiff was in an awful hurry and jumped or lunged from the curb into the right front fender of the truck; that he, the driver, had no chance to

put on his brakes; that he stopped the truck in 30 feet and at the curb and then went back to plaintiff who was lying on the street outside the crosswalk.

Mario Prado testified that he saw the accident; that plaintiff was in the crosswalk and some 5 to 6 feet south of the curb at the time of the impact; that plaintiff had the ''Go'' signal and the light was red for Slauson traffic; that he, the witness, saw the truck but did not notice plaintiff until he hit the right side of the truck, the fender or bumper; that at the time of the impact, plaintiff was in the crosswalk but landed some 25 to 30 feet west of it.

Defense witness, Eleanor C. Peoples, said she was driving a southbound automobile on Broadway and had stopped for a red light; that she saw the amber signal displayed for east and west traffic, started slowly forward, ready to turn, and before she got the ''Go'' signal saw plaintiff falling; that he was about 5 feet from the curb and she was not sure whether he was in the crosswalk; that she saw him falling during the interval between the display of the amber and green lights; that she paid no attention to the truck and was not aware of it.

There were no other eyewitnesses. It is apparent that the evidence was in substantial conflict, especially upon the question of whether plaintiff was contributorily negligent.

Defendants complain of the giving of this instruction at plaintiff's request: ''A pedestrian crossing a street in a marked crosswalk has a right to assume that operators of motor vehicles entering the intersection will exercise a proper degree of care.'' The instruction is correct as far as it goes. Every traveler, motorist or pedestrian, must rely somewhat upon the care of others and must do so innumerable times a day. Without such reliance travel would slow down almost to a standstill. The nature and extent of such reliance is one of the elements entering into the question of whether a given traveler has in fact exercised ordinary care.

Mr. Justice Vallée puts the matter clearly in *Shivers* v. *Van Loben Sels,* 109 Cal.App.2d 286, 289 [240 P.2d 635]: ''White was driving his equipment at a lawful rate of speed. The brakes on his equipment were in good condition. He knew he was traveling on a through highway protected by stop signs. Under these circumstances, he had a right to assume that a driver on a street intersecting the through highway would obey the stop signs and yield the right of way. In making such assumption, White was acting wholly within his rights, and he

cannot be charged with negligence in acting thereon. He can only be charged with negligence under such circumstances from the time he had knowledge, or in the exercise of ordinary care should have known, that the Pontiac was going to disregard the stop sign and enter the highway. After such knowledge, he was bound to use the care of an ordinary prudent person. [Citing cases.] Whether a person exercises the required degree of care is ordinarily one for the jury.'' The matter is stated thus in *Harris* v. *Johnson,* 174 Cal. 55, 58 [161 P. 1155, Ann.Cas. 1918E 560, L.R.A. 1917C 477]: '' 'The general rule is that every person has a right to presume that every other person will perform his duty and obey the law, and in the absence of reasonable ground to think otherwise it is not negligence to assume that he is not exposed to danger which comes to him only from violation of law or duty by such other person.' (29 Cyc. 516; *Medlin* v. *Spazier,* 23 Cal.App. 242 [137 P. 1078].) Such person must, of course, himself use reasonable care to observe the conduct of the other person so far as such conduct may affect his own safety at the time. The plaintiff had the right to assume that the defendant's automobile, or any other vehicle coming westerly on Seventh Street, would confine its travel to the right-hand side of the street, as provided in the ordinance aforesaid, unless and until, in the reasonably careful use of her faculties, she had reasonable cause to believe otherwise.'' The first sentence of the language just quoted is repeated in *Leo* v. *Dunham,* 41 Cal.2d 712, 715 [264 P.2d 1]. *Hendricks* v. *Pappas,* 82 Cal.App.2d 774, 778 [187 P.2d 436], points out that: ''Whether or not reasonable care is used under the circumstances, in relying upon this presumption, is a question for the jury.''

Notwithstanding the principle enunciated in the cases just cited, instructions such as the one now under consideration have been repeatedly condemned because of failure to incorporate therein the condition that the plaintiff (or defendant, as the case may be) himself must be in the exercise of ordinary care when relying upon such presumption. The cases are quite numerous and are exemplified by *Gilbert* v. *Pessin Grocery Co.,* 132 Cal.App.2d 212, 224 [282 P.2d 148]; *Carlson* v. *Shewalter,* 110 Cal.App.2d 655, 658 [243 P.2d 549]; *White* v. *Davis,* 103 Cal.App. 531, 545 [284 P. 1086]; *Angier* v. *Bruck,* 56 Cal.App.2d 55, 58 [131 P.2d 876], and *Angel* v. *Los Angeles Gas & Elec. Corp.,* 5 Cal.App.2d 270, 271 [42 P.2d 690].

These cases must be considered in connection with the settled general rule that failure to include all elements of a

given doctrine in a single instruction is not ordinarily prejudicial or erroneous. (*Dennis* v. *Gonzales,* 91 Cal.App.2d 203, 210 [205 P.2d 55] ; *Perbost* v. *San Marino Hall-School,* 88 Cal. App.2d 796, 801 [199 P.2d 701] ; *Larson* v. *Holland,* 118 Cal.App.2d 520, 524 [257 P.2d 1014] ; *Hoy* v. *Tornich,* 199 Cal. 545, 552 [250 P. 565] ; *Yack* v. *Tiffin,* 69 Cal.App.2d 226, 230 [158 P.2d 620].) In *Forrest* v. *Pickwick Stages System,* 101 Cal.App. 426, 434 [281 P. 723], it is said, with respect to an instruction such as the one under consideration: "Whether the giving of the instruction constitutes reversible error depends upon whether it has the effect of leading the jury to ignore the issue of contributory negligence." And in *Angel* v. *Los Angeles Gas & Elec. Corp., supra,* 5 Cal.App.2d 270, 271: "It will be seen that the instruction given omits all reference to the question of contributory negligence and is in itself an incomplete and inadequate statement of the law. Other instructions to which we shall later refer were given at the request of defendant, which stated the law sufficiently to inform the jury as to the defense of contributory negligence. If we can say with assurance that the jurors must have understood that such other instructions qualified the specific instruction and that the instructions as a whole were understood by the jurors with the same effect as if the specific instruction had been complete in itself, then the error must be held to have resulted in no prejudice to the defendant. If, on the other hand, we are unable to say that the instructions as a whole were clear and not subject to misconstruction by an untrained and inexpert mind, then the error was prejudicial to the defendant and the judgment should be reversed."

In the instant case plaintiff's requested instructions were served in advance, as required by statute, defendants had ample opportunity to propose amendments, did in fact request instructions upon the subject of the challenged instruction, and their proposals were adopted by the court. BAJI[1] 138 was requested by both sides and given as follows: "A person who, himself, is exercising ordinary care has a right to assume that others, too, will perform their duty under the law, and he has a further right to rely and act on that assumption. Thus it is not negligence for such a person to fail to anticipate injury which can come to him only from a violation of law or duty by another. However, an exception should be noted: The rights just defined do not exist when it is reasonably apparent to one, or in the exercise of ordinary care would

[1]Book of Approved Jury Instructions, Los Angeles Superior Court.

be apparent to him, that another is not going to perform his duty. One is not justified in ignoring obvious danger although it is created by another's misconduct, nor is he ever excused from exercising ordinary care." It does not conflict with the one now under attack, but merely supplements it. Counsel do not claim that it omits any element of the applicable rule, or that it falls within the rationale of the *Gilbert* v. *Pessin Grocery Co.* case, *supra*, 132 Cal.App.2d 212, and like cases above cited.

The trial judge, at plaintiff's request, also instructed concerning contributory negligence and the right of way of a pedestrian who crosses a roadway within a marked crosswalk. At defendants' instance the court gave the additional instructions which are set forth in the margin.[2] The jurors were also advised that the instructions should be considered as a whole and each regarded in the light of all the others. Also, that the order in which the instructions are given has no significance as to their relative importance.

The court refused only two of defendants' requests. One related to the effect of depositions. It was inappropriate because there were no depositions used or offered. The request was BAJI 31 and it was probably requested inadvertently when 31a was desired. The other rejected instruction of defendants set forth a part of the text of Vehicle Code,

[2]"It is the duty of every person using a public highway, whether a pedestrian or the driver or operator of any kind of vehicle, to exercise ordinary care at all times to avoid placing himself or others in danger and to exercise ordinary care at all times to avoid a collision."

"The law imposes upon the operator of any vehicle using a public highway, and upon a pedestrian, the same duty, each to exercise ordinary care to avoid causing an accident from which injury might result. This duty continues even when one has the right of way over the other."

"Neither does the fact of having the right of way, if such be the fact, excuse one from the exercise of ordinary care to avoid causing an accident."

"The fact that one has the right of way, if such be the fact, does not excuse him from the exercise of ordinary care to avoid causing an accident."

"Before attempting to cross a street that is being used for the traffic of motor vehicles, it is a pedestrian's duty to make reasonable observations to learn the traffic conditions confronting him; to look to that vicinity from which, were a vehicle approaching, it would immediately endanger his passage; and to try to make a sensible decision whether it is reasonably safe to attempt the crossing. What observations he should make, and what he should do for his own safety, while crossing the street are matters which the law does not attempt to regulate in detail and for all occasions, except in this respect: it does place upon him the continuing duty to exercise ordinary care to avoid an accident."

"The Court instructs you that it is a pedestrian's duty, in the exercise of reasonable care, to look in the direction of anticipated danger."

section 476, concerning the matter of compliance with automatic traffic signals, but it omitted subsection (c) concerning obedience to a red or "stop" signal. The subject is covered by an instruction proposed by plaintiff and given, which does incorporate the pertinent portion of subsection (c).

The instructions in the aggregate left to the jury the question of fact whether plaintiff was negligent in such reliance, if any, as he may have placed upon the presumption that the defendant Eubanks would obey the law and exercise reasonable care to yield the right of way to him. Read in conjunction with the other quoted instructions we can say, with respect to the one which appellants challenge, and "with assurance that the jurors must have understood that such other instructions qualified the specific instruction and that the instructions as a whole were understood by the jurors with the same effect as if the specific instruction had been complete in itself" (*Angel* v. *Los Angeles Gas & Elec. Corp.*, *supra*, 5 Cal.App.2d 270, 271); that the giving of the instruction in question resulted in no prejudicial error. In effect, the trial judge so ruled in denying defendants' motion for a new trial.

The judgment is affirmed.

McComb, Acting P. J., and Fox, J., concurred.