[Civ. No. 7881. First Appellate District, Division One.—March 21, 1932.]

HUGH HANDLEY, Respondent, v. SEBASTIAN LOMBARDI, Appellant.

24

Daniel W. Burbank, C. F. Laumeister, William M. Abbott, K. W. Cannon, Cyril Appel and Ivores R. Dains for Appellant.

Carey & Gorfinkel for Respondent.

DOOLING, J., *pro tem.*—This is an appeal from a judgment for plaintiff following a jury verdict. Plaintiff and respondent was injured in a collision between an automobile truck in which he was riding and an automobile driven by appellant. There is evidence from 'which the jury might find that the truck in which respondent was riding was being operated on the extreme northerly or right-hand side of Twenty-third Street in San Francisco approaching its intersection with Folsom Street from the east; that upon arriving at the easterly property line of Folsom Street the truck was brought to a stop; that it then started to ·cross Folsom Street in second gear and never attained a greater speed than ten or twelve miles per hour; that the driver of the truck and respondent both saw appellant's automobile, about the time the truck started across Folsom Street, approaching them from their right along Folsom Street at a distance of about 300 feet; that neither of them looked to the right again until appellant's automobile was within fifty feet of them and at a time when it was too late for them, by anything that they could do, to avoid being struck. There was likewise evidence that appellant's automobile was traveling at the rate of forty or forty-five miles per hour and struck the right rear wheel of the truck when it was almost across Twenty-third Street, only six feet of the rear portion of the truck then extending into that street; and that the weather was clear and there were no obstructions to vision between appellant's automobile and the truck from the time the truck started to cross Twenty-third Street.

The court instructed the jury on the last clear chance doctrine and appellant claims error on that ground. The

case is on all-fours with *Smith* v. *Los Angeles Ry. Exp. Co.*, 105 Cal. App. 657 [288 Pac. 690, 691], wherein it was held that the jury was properly instructed on the doctrine of last clear chance. In the Smith case a horse-drawn vehicle traveling at the rate of three miles per hour was struck by an electric car traveling at the rate of twenty-five miles per hour. Substitute slow-moving truck for slow-moving horse and wagon, and rapidly moving automobile for rapidly moving street-car and the cases are not distinguishable on their facts, with the exception that appellant had the additional opportunity to avoid a collision afforded by his ability to turn his automobile so as to pass to the rear of the truck which is denied to a street-car confined as it must be to its own tracks.

Specifically, appellant claims that since appellant testified that he did not see the truck until he was almost upon it, there was no evidence from which the jury could find that he had actual knowledge of the danger of collision before it was too late to avoid it. A similar claim was disposed of in the Smith case in the following language: ''The motorman testified that he did not see plaintiff on the tracks until the car was within some 30 feet of the wagon, and that the horses were then upon the track. It is contended that there is no other evidence in the record which would justify a contrary finding. The track, for some blocks leading to Third Street, was straight; one could see for several blocks; the motorman himself admitted he could see for some 150 feet ahead. He was sitting on his chair at the front of the car, with his hand on the control, for several hundred feet while approaching the scene of the injury. The wagon was moving at the very slow speed of three miles per hour. The car was moving about eight times as fast, or some 25 miles per hour. The wagon had proceeded some 12 feet into the path of danger before being struck. Under all the circumstances . . . the jury might have found that the motorman saw plaintiff in time to have avoided the injury, and while plaintiff was actually in peril.'' The same inference could have been drawn in the case in hand. It is obvious, with the truck moving ten or twelve miles per hour, that there would be an appreciable time when the truck would be in a position of danger from which nothing that the driver of the truck could do could possibly extricate it.

From the time that the front end of the truck was too close to the path of the oncoming automobile to stop before entering that path, until it was actually struck in the rear wheel, the driver of the truck was helpless to avoid the collision. During the same period appellant, by either applying his brakes or swerving behind the truck, could have avoided striking it. ■ The truck was there in plain sight; appellant was sitting at the wheel of the oncoming automobile; there were no obstructions to his view. The jury was not bound to accept his testimony that he did not see the truck until just before he struck it.

The Smith case likewise answers appellant's claim that if respondent was guilty of negligence it continued up to the very instant of collision. In the Smith case the court said: "The jury might well have found that when plaintiff had partly crossed the track he had reached a point where he could not help himself, and from that time on vigilance on his part would not have averted the injury. His negligence in reaching that position becomes the condition, not the proximate cause, of the injury."

In cases no more favorable to the plaintiffs on their facts, the Supreme Court held the doctrine of last clear chance applicable in *Zerbo* v. *Electrical Products Corp.*, 212 Cal. 733 [300 Pac. 825], and *Rocha* v. *Garcia,* 203 Cal. 167 [263 Pac. 238].

■ Plaintiff at the time of the collision was the superintendent for one J. H. Kruse and was traveling from one warehouse to another within the scope of his employment, in an automobile truck driven by plaintiff's son, who was also employed by Kruse as a truck driver. That plaintiff, as Kruse's superintendent, had the power to direct and control the driver of the truck is the only fair conclusion from his own testimony. This being so, appellant proposed certain instructions directing the jury that if the driver of the truck was guilty of any negligence which proximately contributed to the collision, such negligence must be imputed as a matter of law to plaintiff. The refusal of such instructions is claimed to be error.

Plaintiff was not the master or principal of the driver of the truck, but only an intermediate and superior employee or agent. This being so, the doctrine of *respondeat superior* or *qui facit per alium* is not properly applicable to him.

His power to direct and control the driver was not as master, but only by virtue of the fact that they were both employed by Kruse, and the further fact that as Kruse's agent he was delegated Kruse's authority over the driver. In this situation the language of section 2351 of the Civil Code seems to be controlling: "A sub-agent, lawfully appointed, represents the principal in like manner with the original agent; and the original agent is not responsible to third persons for the acts of the sub-agent."

In the case of actionable negligence, the rule is well settled both in this state and elsewhere that the negligence of a subordinate employee or subagent is not to be imputed to a superior employee or agent, but only to the master or principal. (*Hilton* v. *Oliver*, 204 Cal. 535 [61 A. L. R. 297, 269 Pac. 425]; *Guild* v. *Brown*, 115 Cal. App. 374 [1 Pac. (2d) 528]; *Ellis* v. *Southern Ry. Co.*, 72 S. C. 464 [2 L. R. A. (N. S.) 378, 52 S. E. 228]; *Thurman* v. *Pittsburg & M. Copper Co.*, 41 Mont. 141 [108 Pac. 588]; 2 Cor. Jur., p. 829; and see the elaborate note in 61 A. L. R. 277, and particularly that part commencing at p. 290.) We can see no logical reason for drawing any distinction in this regard between actionable negligence and contributory negligence. The fact that plaintiff had the power of control over the driver was certainly a factor to be considered with all other circumstances in determining whether he himself was personally negligent; and the jury might well find that one who had the power to control the driver would be guilty of negligence where in the same circumstances one who had no such power would not. But that is a very different matter from saying that the driver's negligence is to be imputed to the plaintiff. If any regard is to be had to making a symmetrical pattern of the law, it will not do to say that a superior employee is not to be held liable for his subordinate's negligence where a liability is sought to be imposed upon him by a third person, but is to be held liable for the subordinate's negligence where he seeks to impose a liability upon the third person.

The case most strongly relied upon by appellant, *Chesapeake & O. Ry. Co.* v. *Warnock's Admx.*, 232 Ky. 340 [23 S. W. (2d) 558, 560], falls into the error of confusing the position of the superior employee with that of the employer and fails to take into consideration the fact that the rela-

tion of master and servant does not exist in the case of the former. This confusion is aptly illustrated by the following language from that opinion: "The court approved a quotation from 29 Cyc. 545, to the effect that it is the universal rule that the negligence of a servant is imputable to the master to prevent recovery by him for injuries to which the servant's negligence contributes; in other words, the master assumes the risk of the negligence of the employee, unless the negligent act of the servant was not committed while acting within the scope of his employment." The error of applying this rule to the case of a superior employee seems readily apparent.

The driver of the truck was not plaintiff's employee but Kruse's; he was not engaged in plaintiff's business but Kruse's; he was only subject to plaintiff's direction and control because plaintiff was there acting for and in the place of Kruse, and certainly while the driver was acting in the scope of his employment as Kruse's employee, in no true sense can it be said that he was acting in the scope of his employment by plaintiff, since he was not in any proper sense employed by plaintiff.

The case of *Bosse* v. *Marye*, 80 Cal. App. 109 [250 Pac. 693], is not apposite. There Miss Marye was in the true sense the direct agent of Miss Spreckels. The case may seem at first glance to approximate the case before us, because Miss Marye, who was driving the car, Miss Spreckels, who was riding with her, and Miss Spreckels' father were all held liable for Miss Marye's negligence. But when it is pointed out that Mr. Spreckels was held liable, not as Miss Marye's principal on the doctrine of *respondeat superior,* but solely by virtue of the statutory liability imposed upon a father who signs a minor's application for a driver's license, the apparent similarity between the cases is dissipated.

We conclude upon this point that negligence is not to be imputed as a matter of law to a superior servant or agent, and that the rule laid down in the following cases was properly followed by the trial court: *Bryant* v. *Pacific Elec. Ry. Co.,* 174 Cal. 737 [164 Pac. 385], and *Sichterman* v. *Hollingshead Co.,* 94 Cal. App. 486 [271 Pac. 372, 1111]. In view of our conclusion on this point, the instructions actually given by the trial court, that if the jury found that

plaintiff had the power to control the driver of the truck, the driver's negligence, if any, was to be imputed to plaintiff, were more favorable to appellant than he was entitled to have them, and appellant's complaint, that on this issue the court erroneously instructed as to the burden of proof, is for that reason immaterial.

The court concluded an instruction to the effect that the negligence of the driver of the truck would not in itself bar plaintiff's right of recovery with the following sentence: "This instruction assumes, of course, not only that the injured party did not exercise or assume or endeavor to exercise control or supervision over the operation of the car by the driver, but also that he had no power or authority so to do." The jury was not thereby told as a matter of fact that control or supervision were not exercised by plaintiff. The reasonable effect of this language was to tell the jury that it was to apply the preceding portion of the instruction only if it found that plaintiff did not exercise control over the driver, etc.

The court gave the following instruction: " 'Subject to the provisions of subdivision (a) of this section and except in those instances where a lower speed is specified in this act, it shall be lawful for the driver of a vehicle to drive the same at a speed not exceeding the following: 20 miles an hour in a residence district as defined herein'; and I further instruct you that if, under the conditions that prevailed at the time of the collision complained of in plaintiff's complaint, the motor vehicle operated by the defendant at a rate of speed allowed by law, upon the application of its brakes was likely to crash into other vehicles, then a speed within the maximum allowed by law would be unlawful, and the jury would have a right to consider that under the circumstances, the defendant, Sebastian Lombardi, was not exercising reasonable and proper care or having due regard to the traffic or surface of the highway on which he was traveling.

"It is not the purpose of the court in giving you that instruction to of itself make any suggestion to you of the fact or possible fact, much less a suggestion to you with reference to what your finding or conclusion will be.'

The last sentence of this instruction so qualifies what precedes that the jury, particularly in view of the general in-

structions upon negligence and its powers as triers of the facts, cannot have been misled into believing, as claimed by appellant, that it could or must find appellant guilty of negligence if it found that at the speed at which he was driving he was likely to crash into other vehicles, even though the collision was caused solely through the fault of the driver of the other vehicle.

During the court's charge to the jury, the court started to read a proposed instruction, and then discontinued it, in the following language: "You are instructed that a passenger in a motor vehicle has a right to suppose that the driver will exercise due care for the protection and safety of his passenger— I will omit that. It has been given so far as necessary." We do not feel called upon to decide whether the portion of the proposed instruction thus read to the jury is a correct statement of law, since it is clear that the jury was informed that the instruction was not being given by the court, but was withdrawn from its consideration.

Certain instructions were proposed by appellant to the effect that if the collision was the sole proximate result of the negligence of the driver of the truck in which plaintiff was riding, he could not recover. The court apparently confused these proposed instructions with the doctrine of contributory negligence and qualified them accordingly. We cannot see how appellant was injured thereby. The jury was clearly and repeatedly instructed that, in order to find a verdict against appellant, it must find that he was negligent and that his negligence proximately caused the collision. A finding that this was so is entirely inconsistent with the possibility that the collision was solely caused by the negligence of the driver of the truck; and since the jury must have found, under the instructions, that appellant was guilty of negligence and that his negligence was a proximate cause of the collision, it could not have found that the sole proximate cause of the collision was the negligence of the driver of the truck.

Appellant complains that in certain instructions on contributory negligence the court, in charging that the burden of proof on this issue was on defendant, omitted the qualification "unless it can be inferred from the evidence given in support of plaintiff's case". This qualification was

expressly stated in instruction XXXV, and *Mast* v. *Claxton,* 107 Cal. App. 59 [290 Pac. 48], disposes of this objection. Instructions, as reiterated in the opinion in that case, are to be considered as a whole, and a portion of one instruction cannot be considered by itself and a judgment reversed simply because the whole of the law upon the subject there dealt with is not stated in the portion of the instruction singled out for attack.

In his argument to the jury, plaintiff's attorney referred to defendant as "this rich dairyman". Counsel for appellant immediately objected and the court at once admonished the jury to disregard this reference. The statement should not have been made, but in view of the prompt admonition to the jury, we cannot hold that it constituted prejudicial misconduct.

The witness Clarence Handley testified to a conversation with appellant shortly after the collision which, coupling the parts of the conversation and omitting interruptions by the court and counsel, runs as follows: He said he was very sorry it happened and wanted my father to have the best treatment that was available. . . . And that he was fully covered with insurance and he admitted . . . "I am responsible for this accident."

While a reference to the fact that defendant is insured against liability may be highly prejudicial, and the courts do not hesitate to reverse verdicts of juries where such evidence is improperly admitted (*Squires* v. *Riffe,* 211 Cal. 370 [295 Pac. 517]), it is a well-settled exception to the general rule that where the reference to insurance is incidental to an admission of liability by defendant and a part of the same statement, it is admissible, not to prove the fact of insurance, but solely because it is a part of the admission. (*McPhee* v. *Lavin,* 183 Cal. 264 [191 Pac. 23]; *Dullanty* v. *Smith,* 203 Cal. 621 [265 Pac. 814]; *Harju* v. *Market Street Ry. Co.,* 114 Cal. App. 138 [299 Pac. 788].) The evidence of the conversation above set out falls within this exception.

At the trial a medical witness was called and testified for plaintiff. On his cross-examination a letter written by him to the state compensation insurance fund was produced and he admitted having written it. The letter contained the following language in reference to the plaintiff

in this case: "( . . . from the bone injury this patient sustained he would make a complete recovery and should be able to return to work in from four to six months.) But on account of keeping alive his symptoms so that when his case comes to trial he could say that he has been totally disabled over such and such a period of time, it would probably strengthen his suit.

"In my last examination of this patient, and I believe this would be substantiated by most anyone, there is no limitation of motion about the hips or spine. His symptoms are entirely subjective and is going to be a question of litigation settlement before he does return to work."

Those portions of this letter in which the doctor expressed his opinion that plaintiff was or might be keeping his symptoms alive because of his pending litigation were excluded by the court. We can see no error in this. The portions of the letter which dealt with the doctor's findings and conclusions as to plaintiff's physical and mental condition were admitted. The portions of the letter in which the doctor went into the realm of speculation to find a reason for that condition in the pendency of this action were not properly the subject of expert medical testimony and were rightfully excluded. The trial court expressly allowed the doctor to be cross-examined as to whether in his opinion plaintiff's symptoms were purely subjective, but refused to permit him to be cross-examined about those portions of the letter which were excluded from evidence. In this we can see no error and appellant has cited no authority in point.

Before the injury, plaintiff had a hernia on the right side. After the injury he likewise developed a hernia on the left side. Plaintiff was allowed at the trial to amend his complaint to specifically mention these hernias. The allowance of the amendment lay properly in the trial court's discretion. As to the hernia on the right side, the court instructed the jury: "It has been testified to here in effect that at the time of the accident the plaintiff was suffering a physical disability in the form of hernia. I will say to you that that cannot be at all considered in this case with reference to damages, in the event you find for the plaintiff." This effectually took the consideration of the hernia on the right side from the jury. As to the cause of the hernia on the left side, there was no medical testimony,

but plaintiff testified that it developed after the collision and while he was confined to his bed in the hospital. This was enough in our opinion to take the question of the cause of that hernia to the jury.

Judgment affirmed.

Cashin, J., and Knight, Acting P. J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on April 20, 1932, and an application by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on May 19, 1932.