['Civ. No'. 809. Fourth Appellate District.—February 17, 1933.]

LAWRENCE KERNER et al., Respondents, v. PEACOCK DAIRIES, INC. (a Corporation) et al., Appellants.

W. M. Conley, Philip Conley, Matthew Conley and Conley, Conley & Conley for Appellants.

Edmond A. Chevalier and Denver S. Church for Respondents.

MARKS, J.—The respondent Christina Kerner is the widow of August D. Kerner, who was killed in an automobile collision on July 22, 1931. The nine minors who are respondents are their children. They recovered judgment for $10,000 damages from which this appeal is taken.

At the time of the accident deceased was driving his Chevrolet touring car westerly on North Avenue, and appellant Moore was driving a one and a half ton panel body Ford delivery truck south on Fowler Avenue. The two streets intersect at right angles. The intersection was an obstructed one where the speed limit was fifteen miles an hour, under the definition contained in section 113 of the California Vehicle Act. At the time of the accident the visibility was good and the roadways dry. Fowler Avenue is a graded country road about forty-one feet wide between gutters with a hard-oiled surface about twenty feet wide

in its center. North Avenue is graded to a width of about thirty-two feet with an oiled strip about fifteen feet in width in its center.

As grounds for a reversal of the judgment, appellants urge: 1. That the court erred in denying their motions for instructed verdicts; 2. That the verdict and judgment are not supported by the evidence and are contrary to it; 3. That the trial court erred in overruling objections to evidence offered by respondents; 4. That the trial court erred in giving instructions proposed by respondents, and in refusing to give instructions requested by appellants. ■ The first specification of error is included in the second and will not be separately discussed.

August D. Kerner died shortly after the accident and respondents were compelled to rely entirely upon the physical facts of the accident as evidenced by skid-marks upon the road surface and the appearance and positions of the vehicles after the collision, together with extrajudicial admissions against interest by Moore and Christiansen and their admissions while on the witness-stand.

Christiansen and Moore, both employees of the Peacock Dairies, Inc., the only living witnesses to the accident, testified on behalf of appellants. Their evidence may be summarized as follows: That Moore was driving the truck with Christiansen sitting beside him; that they approached and entered the intersection on their right-hand side of Fowler Avenue at a speed of about twenty miles an hour; that they entered the intersection first and observed the Chevrolet approaching the intersection from their left at a speed of between thirty-five and forty-five miles an hour; that when the rear of their truck had reached a point near the center line of North Avenue the deceased turned his Chevrolet sharply to his left and drove its right front into the left rear wheel of the truck; that the collision took place several feet south of the center line of North Avenue and on Kerner's left-hand side of the street; that by the time he reached the center line of Fowler Avenue the north half of North Avenue was free and clear of anything obstructing it so that he could have proceeded on his way westward on his own side of the street and have avoided the collision; that the force of the impact caused the truck to roll over twice; that it came to rest between sixty and seventy-five

feet south of the intersection lying on its side at right angles to Fowler Avenue with its front to the east; that the Chevrolet came to rest standing on its wheels facing northwest at the southwest corner of the intersection.

Appellants contend that as these two men were the only eye-witnesses to the accident, and as their testimony stands uncontradicted by that of any other eye-witness, it must be taken as true and that the judgment cannot stand. It is true there was no living witness to the accident to contradict their accounts of it. It is also very evident from the verdict rendered that the jury did not believe their evidence, for if their testimony were taken as true the judgment should have gone for the appellants. We must, therefore, carefully examine the record to determine whether the verdict and judgment find evidentiary support, and whether the action of the jury in rejecting the evidence given on the witness-stand by Moore and Christiansen is justifiable.

We find a rather complete and careful description of the tire-marks made by the Chevrolet and truck on the road surface of the intersection, photographs of the Chevrolet and a description of its condition after the accident, a full description of the course taken by the truck after the collision, and an account of the position of the deceased in his automobile after it came to rest. All of this evidence can be reasonably construed as directly contradicting that of Christiansen and Moore, and as supporting the theory of respondents, and the verdict and judgment.

In many instances evidence of the conditions surrounding a collision between motor vehicles is of controlling force. In many cases, when accepted as true by a jury or trial judge, it has been permitted to overcome positive contrary oral evidence. (See *Fletcher* v. *Lloyd,* 75 Cal. App. 205, 212 [242 Pac. 746]; *Fong Lin* v. *Probert,* 50 Cal. App. 339 [195 Pac. 437].)

The first witness on the scene of the accident, other than the parties, testified that skid-marks made by the Chevrolet started seven or eight feet west of what we assume to be the line of the east gutter of Fowler Avenue produced across North Avenue. These skid-marks extended west "about 4 or 5 or 6 feet, something like that, near to the middle" of Fowler Avenue and then turned sharply south for an additional distance of five or six feet, where they

ended in "another mark, when the Chevrolet kind of turned around and pushed sideways on North Avenue and Fowler, on the corner, kind of pushed it west about 2 feet, something like that". The same witness saw the skid-marks made by the tires of the truck. They started at about "the imaginary property line" bounding North Avenue on the north and extended south about nine feet, "The marks both of them sliding as they come together. From there on you couldn't see no further mark. The truck tipped over a couple of times." From the testimony of this witness it is evident that he placed the point of impact between five and seven feet south of the center line of North Avenue and slightly west of the center line of Fowler Avenue.

. Several witnesses described the damage to the Chevrolet without giving us a very clear idea of its condition after the accident. However, there are several clear photographs of it in the record, which, with the descriptions of the witnesses, give us a good picture of its condition. The right front fender is bent upward and inward, with the top of its arch slightly back of the rear of the radiator. The portion in front of this point has the outside edge bent inward. The front end is not crumpled backwards. No damage to the front of the radiator, frame or headlights appears, except that the right headlight is deflected to the right when viewed from the driver's position. The glass is not broken from the headlights. The right front wheel is bent sharply outward from the rear, with the greatest outward deflection appearing in the upper rear quarter segment and a corresponding inward deflection in the lower front quarter segment. The front of the right running-board is splintered. The covering of the top, over the rear seat, is torn off. The steering-wheel and windshield are intact and undamaged.

Christiansen went to the Chevrolet immediately after the accident. He saw Kerner lying with his head and shoulders on the rear seat with his feet on the floor between the seats. The next witness to view him described him as kneeling on the floor between the seats.

We are given no clear description of the condition of the truck after the collision. There is a photograph of its front as it was lying on its right side across Fowler Avenue from which it would appear that the left front hub-cap extended outward beyond the tire, left fender and front

bumper. We know nothing further concerning its left side.

The damage to the right side of the Chevrolet, and the lack of any damage to its front, would indicate that it was "side-swiped" by the truck and did not run into it. This theory is further strengthened by the position of Kerner after the collision. If the testimony of Christiansen and Moore was true, and the Chevrolet while traveling at about twice the speed of the truck had run into it, all movable objects in the Chevrolet would have received a sharp forward impulse from the sudden stopping of its onward progress. Such was not the case. Kerner was catapulted from his position at the steering-wheel, over the back of the seat, on to the floor and rear seat of his car. This would indicate that the Chevrolet received a sudden and powerful shove forward sufficient to throw Kerner over the back of the front seat into the position in which he was found. The further fact that the upper rear quarter segment of the right front wheel of the Chevrolet was deflected outward, and the lower front quarter segment inward, might indicate that the truck, traveling at a much greater speed than the Chevrolet, hooked on to this wheel, while the rear portion was turned outward in turning the car sharply to its left, which gave it the forward impulse throwing Kerner on to the back seat. That the Chevrolet was jerked about two feet to its right by the impact lends further support to this theory. The further fact that the truck tires skidded about nine feet before the impact, and that afterward the truck turned over twice, rolling between sixty and seventy-five feet before it came to rest, strongly supports the conclusion that it was traveling much more than twenty miles an hour when it entered the intersection. The jury could also reasonably infer that Kerner entered the intersection first.

The inferences from the physical facts surrounding the accident are evidence in the case which the jury evidently accepted as true. They flatly contradict the testimony of Christiansen and Moore, which the jury evidently rejected as untrue. The implied finding of a jury on conflicting evidence is conclusive on appeal.

Statements made by Moore and Christiansen after the accident were admitted in evidence as only binding on the person making them. Moore said, "We were driving pretty fast", and that he did not see the other car until the impact.

Christiansen said of the accident, "it was all my fault . . . We seen him, but we couldn't stop; I wish I was driving, it wouldn't have happened."

A portion of Moore's evidence deserves special mention. He testified that when he was twenty feet north of the north property line on North Avenue he saw the Chevrolet two hundred feet to his left traveling at a speed of forty miles an hour while the truck was traveling twenty miles an hour. If these estimates of distances by this witness be taken as a basis of computation, the Chevrolet traveled about five or more times the distance traveled by the truck to reach the point of impact. If the speed of the truck be taken as twenty miles an hour, the Chevrolet would have had to maintain a speed of one hundred or more miles per hour to reach the point of collision at the same time the truck arrived there. The photographs show the Chevrolet to be of ancient vintage. Its most ardent admirer would not claim it capable of maintaining any such speed. This testimony may be one of the reasons the jury refused to accept Moore's account of the accident.

From our study of the record we have concluded that the trial court properly denied appellants' motions for instructions to the jury to bring in a verdict in their favor and that there is ample evidence to sustain the verdict and judgment.

■ Appellants next complain because the trial court overruled their objections to questions propounded to witnesses, and admitted in evidence declarations against interest made by Christiansen and Moore. In each instance the trial court carefully instructed the jury that the declaration could be considered against the party making it, and no other. It is true that part of the declarations might better have been admitted in rebuttal after the witnesses had testified. This goes to the order of proof, which is a matter largely in the discretion of the trial judge, and we can see no abuse of discretion in the admission of evidence out of the usual order.

Appellants complain of two instructions given at the request of respondents, and of the refusal to give several instructions which they proposed. The other given instructions are not printed in appellants' briefs, nor any supplement, as required by the rules adopted for this court. For

that reason we might be justified in refusing to consider the alleged errors. (*Coats* v. *Hathorn,* 121 Cal. App. 257 [8 Pac. (2d) 1038].) Because they contend there were no other instructions given on the subjects embodied in the refused instructions, we have examined all of the instructions given, as well as all of those which were refused.

The first instruction of which appellants complain opens with the statement that the burden was on the defendants to prove the contributory negligence of Kerner. Then follows the portion to which objection is made, where it is stated that the law presumes that Kerner took "ordinary care of his own concerns and exercised due care for his own safety," and that this presumption is a "species of evidence and it shall prevail and control unless it is overcome by satisfactory evidence". A similar instruction was approved in *Olsen* v. *Standard Oil Co.,* 188 Cal. 20 [204 Pac. 393]. See, also, *Davis* v. *Tanner,* 88 Cal. App. 67 [262 Pac. 1106]. Appellants assert that the rule announced in these cases has been overruled in *Rogers* v. *Interstate Transit Co.,* 212 Cal. 36 [297 Pac. 884, 885]. We do not so understand the Rogers decision. It was there said: "Whether the plaintiff took ordinary care of his own concerns while operating his car at that particular occasion was a matter of evidence established by the plaintiff and witnesses called by him in support of his claim that he did. In the face of this evidence there was no room for any presumption. If the evidence on his part showed that he was negligent, then it cannot be said that the jury, notwithstanding this evidence, might presume that he was not negligent, or that he took ordinary care of his own concerns, which amounts to the same thing. On the other hand, if this evidence showed that plaintiff was not negligent in the operation of his car at the time of its collision with defendant's stage, then that fact was before the jury, not as the result of any presumption, but in response to testimony of witnesses testifying in the case. In either event, the jury, in determining whether the plaintiff was guilty of negligence, would look to and be governed by the evidence before the court, and not by any presumption. Whatever the rule may be when evidence contrary to the presumption is produced by the adverse party, it is well established in this state that a presumption in favor of a party is entirely

dispelled by the testimony of the party himself or of his witnesses.''

In the instant case the appellants produced no evidence showing contributory negligence on the part of Kerner and were entitled to the benefit of the presumption under the rule announced in *Smellie* v. *Southern Pac. Co.*, 212 Cal. 540 [299 Pac. 529].

■ The second instruction of which appellants complain stated the ''great peril'' rule, which was proper under the facts of this case.

■ Appellants complain of the failure of the trial judge to give eight instructions proposed by them. The subject matter of seven of these instructions was properly covered by others given. It would have been better to have given the other requested instruction, which was on burden of proof, as no one instruction was devoted to that subject. Taken as a whole, we regard the instructions given sufficient and can find no prejudicial error in the refusal to give this instruction.

Judgment affirmed.

Barnard, P. J., and Jennings, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on March 18, 1933, and an application by appellants to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on April 18, 1933.