[Civ. No. 9855. Second Appellate District, Division One.—April 9, 1936.]

MAYTE B. HELLMAN et al., Respondents, v. ROWLAND H. BRADLEY et al., Appellants.

A. G. Ritter, Syril S. Tipton and Elmer E. Sawyer for Appellants.

Meserve, Mumper, Hughes & Robertson and Timon E. Owens for Respondents.

SHINN, J., *pro tem.*—Appeal from a judgment after verdict of the superior court in an action for wrongful death.

Plaintiffs sue as the surviving wife and son of decedent Hellman, who met his death while driving an automobile which came into collision with a light delivery truck owned by defendants Bradley and driven by their employee Hos-

kins. Vermont Avenue is 130 feet wide, divided into two lanes, one for southbound and one for northbound traffic, which are separated by a right of way carrying double tracks of the Pacific Electric Railway. North of One Hundred and Twentieth Street the lanes are 40 feet wide and the right of way 50 feet wide. From One Hundred and Twentieth Street south the lanes of traffic are 30 feet wide and the right of way 70 feet wide. Hoskins drove south in the west lane until he came to One Hundred and Twentieth Street, where he turned to the left across the right of way and ran into the side of a coupe being driven by Hellman north in the east lane of Vermont Avenue. The cars came together with terrific force and both drivers were killed.

It is earnestly insisted by counsel for appellants Bradley that the evidence established as a matter of law that the deceased Hellman was guilty of contributory negligence barring a recovery by his heirs. The evidence is construed to establish that the Hellman car was traveling at a speed of 45 miles per hour (which was not an unlawful speed at that place); that it skidded about 45 feet up to the point of impact; that it is apparent from these facts that Hellman did not see the truck until he applied his brakes; that although the accident happened after dark the streets were lighted and the truck was in plain sight, and it is argued that, therefore, Hellman was negligent either in not seeing it as it approached across the car tracks or in failing to use due care to avoid the accident after he saw it. There was evidence that Hoskins was driving at a speed of 35 miles per hour; that he made the turn at this speed practically on two wheels; that by reason of his speed the tires of the truck caused a loud, screeching sound, and that the truck did not diminish its speed before the collision. Upon this statement, which sets forth the essential facts in evidence, we are unable to say that there was no reasonable basis for a finding of the jury that Hellman was not guilty of negligence. (*Seller* v. *Market Street Ry. Co.*, 139 Cal. 268 [72 Pac. 1006]; *Johnson* v. *Southern Pacific R. R. Co.*, 154 Cal. 285 [97 Pac. 520]; *Gregg* v. *Western Pacific R. R. Co.*, 193 Cal. 212 [223 Pac. 553]; *Ramsey* v. *Pasini*, 108 Cal. App. 527 [291 Pac. 884]; *Couchman* v. *Snelling*, 111 Cal. App. 192 [295 Pac. 845].)

It is next urged that the court erred in giving an instruction upon the doctrine of last clear chance. The form

of the instruction is not criticized and it is therefore unnecessary to quote it. It is contended that the evidence furnished no reasonable basis for the application of the doctrine and that no instruction on the subject should have been given. The instruction should not have been given if the evidence failed to furnish any reasonable basis for finding that Hoskins saw the Hellman car and realized, or in the exercise of ordinary care should have realized, that Hellman was in a position of danger from which he could not escape by the use of ordinary care and that thereafter Hoskins could have avoided the accident by the use of ordinary care and voluntarily did not do so. (*Starck* v. *Pacific Electric Ry. Co.*, 172 Cal. 277 [156 Pac. 51, L. R. A. 1916E, 58]; *Girdner* v. *Union Oil Co.*, 216 Cal. 197 [13 Pac. (2d) 915].) We believe there was sufficient evidence to warrant affirmative findings by the jury upon these questions.

The facts of the case are so unusual as to call for discussion. Both drivers, as we have stated, were killed. Neither had a passenger. What each saw and what his reactions thereto may have been were necessarily to be determined from the testimony of observers as to the circumstances of the collision. Although the accident happened after dark, the streets were lighted and the visibility was good. All of the witnesses who testified on the subject stated that the two automobiles could be plainly seen. It does not appear that there was anything to obstruct the view of either driver. There was testimony showing that after Hoskins turned to the left to cross the street car tracks and right of way of the railway company he had 100 feet or more to travel before reaching the point of the collision, and while he was traveling that distance he had a clear opportunity to see the Hellman car coming from his right. It is not suggested that there was any other traffic on the street to distract Hoskins' attention from the approaching Hellman car. When we seek for some fact which would justify our taking the view that such affirmative findings would be unsupported we find nothing save the single circumstance that Hoskins did not stop his car as he should have done had he appreciated the danger. The jury was not required to accept this fact as proof that he did not see the other car. That circumstance is to be found in every case in which the doctrine of last clear chance has application. Careful drivers do stop their cars under

such circumstances, but the rule of last clear chance is the necessary outgrowth of the conduct of persons who have handled instrumentalities of various sorts in a negligent manner, and in this connection, if the jury in considering the probabilities of the case gave weight to the fact that the driver, Hoskins, was intoxicated, which they had a right to do under the evidence, and if they believed that he saw the Hellman car, as they had a right to believe, and to some extent attributed his reckless conduct to his intoxication, we see nothing unreasonable or illogical in their doing so. Whether the driver of one car saw another car and realized, or if careful should have realized, that an accident was likely to happen if he proceeded upon his way, are questions that may be answered without the admission of the driver or any other form of direct evidence. Where ability to see and opportunity to see a physical object are established, there is a basis for believing, in the absence of credible evidence to the contrary, that it was seen. It is to be presumed that automobile drivers look about when they are entering intersections and it is to be supposed that they see that which is in plain sight. The doctrine of last clear chance does not proceed upon such presumption or supposition. It requires evidence sufficient to support a reasonable conclusion, not that the party charged with having had the last clear chance to avoid the accident might or could have seen, but that he actually did see. If the evidence does not meet this requirement, the doctrine does not apply. Such is the rule to which the courts of this state are firmly committed. But it has been found frequently by trial judges and juries that persons have seen objects which they have denied under oath having seen, and where the circumstantial evidence has been deemed sufficient such findings have been upheld. (*Wahlgren* v. *Market Street Ry. Co.*, 132 Cal. 656 [62 Pac. 308, 64 Pac. 993] ; *Smith et al.* v. *Los Angeles Ry.*, 105 Cal. App. 657 [288 Pac. 690] ; *Handley* v. *Lombardi*, 122 Cal. App. 22 [9 Pac. (2d) 867] ; *Darling* v. *Pacific Electric Ry. Co.*, 197 Cal. 702 242 Pac. 703] ; *Hoy* v. *Tornich*, 199 Cal. 545 [250 Pac. 565].) We are unable to say that the evidence was not sufficient to warrant the jury in believing that Hoskins saw the Hellman car.

We have even less difficulty in believing the evidence sufficient to support a finding that after seeing the Hellman

car Hoskins realized, or if he had used ordinary care would have realized, that Hellman was in a position of danger from which he could not escape by the use of ordinary care. That he was in such position can scarcely be questioned in view of the fact that within a few seconds he met his death. When Hoskins chose, after crossing the tracks, to continue his course, he could scarcely have failed to realize that he was placing Hellman in a position of danger. The latter might have extricated himself from the danger had he been aware of it, but his position was legally one from which he could not extricate himself if he did not realize his danger. The theory that Hellman did not realize it until too late to avoid the accident finds substantial support in the fact that he applied his brakes suddenly with sufficient force to skid the wheels. The remaining question of fact relates to the ability of Hoskins to avoid the accident after he became conscious of the danger of a collision. With an open view he drove from a place of safety into one of danger. He had ample time to stop after the Hellman car was plainly to be seen. This was sufficient, with the other evidence which the jury could have accepted, to warrant a finding that he had the last clear chance to avoid the accident. In stating the circumstances under which it is proper to give an instruction on the last clear chance doctrine this court said, in *Howard* v. *Worthington*, 50 Cal. App. 556 [195 Pac. 709, 710]: "According to some of this evidence, the jury might have reached the conclusion . . . that the defendant was in a position to see, and did see, that unless defendant's machine was stopped a collision would occur; that the defendant could have stopped his machine in time to avoid the accident, but voluntarily did not do so. In this condition of the evidence the plaintiffs were entitled to an appropriate instruction in the terms proposed by them or the legal equivalent thereof." Under this statement of the rule, applied to the facts of the present case, the instruction was properly given.

■ The jury was instructed to the effect that in the absence of evidence to the contrary the law presumes that the deceased Hellman acted with reasonable prudence and that unless controverted the presumption must prevail. Appellants' criticism is not directed as to the form of the instructions, but to the fact that they were given where, it is claimed, there was evidence to controvert or overcome the presumption.

But the presumption does exist and in doubtful cases it is for the jury to say what weight it carries. The court does not err in giving such instructions in a case where the evidence, including the presumption, reasonably points to an absence of negligence, and we have held that the question of Hellman's contributory negligence on the entire evidence was one of fact and not of law. Therefore the instructions were properly given. (*Smellie* v. *Southern Pacific Co.*, 212 Cal. 540 [299 Pac. 529]; *Olsen* v. *Standard Oil Co.*, 188 Cal. 20 [204 Pac. 393]; *Anderson* v. *Southern Pacific Co.*, 129 Cal. App. 206 [18 Pac. (2d) 703]; *Kerner* v. *Peacock Dairies, Inc.*, 129 Cal. App. 686 [19 Pac. (2d) 283]; *DeLannoy* v. *Grammatikos*, 126 Cal. App. 79 [14 Pac. (2d) 542].)

A comparison of the instructions requested by defendants and refused, with those given, satisfies us that the jury was instructed correctly and sufficiently upon the principles to which the refused instructions related.

One of the grounds urged on motion for a new trial was that of newly discovered evidence. There was nothing in the showing made which would justify this court in saying that the trial court abused its discretion in denying the motion upon the ground of newly discovered evidence. (*Estate of Walden*, 166 Cal. 446 [137 Pac. 35]; *Jones* v. *Foster*, 116 Cal. App. 102 [2 Pac. (2d) 582]; *O'Rourke* v. *Vennekohl*, 104 Cal. 254 [37 Pac. 930]; *O'Nash* v. *Booth*, 117 Cal. App. 614 [4 Pac. (2d) 278]; *Waer* v. *Waer*, 189 Cal. 178 [207 Pac. 891]; *Abelseth* v. *San Francisco*, 129 Cal. App. 552 [19 Pac. (2d) 53]; *Toriyama* v. *Putnam*, 134 Cal. App. 201 [25 Pac. (2d) 34].)

The judgment is affirmed.

Houser, P. J., and Doran, J., concurred.

A petition by appellants to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on June 8, 1936.