[Civ. No. 9601. Third Dist. Oct. 16, 1959.]

LEONA GULLEY et al., Respondents, v. ROBERT LEE WARREN, JR., et al., Appellants.

Bledsoe, Smith, Cathcart, Johnson & Phelps, Leighton M. Bledsoe and Raymond A. Leonard for Appellants.

P. M. Barceloux, Burton J. Goldstein and Goldstein, Barceloux & Goldstein for Respondents.

SCHOTTKY, J.—This is an appeal by Robert Lee Warren, Jr., and Santa Clara Painting Company from an adverse judgment in an action brought by Leona Gulley, individually and as guardian *ad litem* for three minor children, and Estella Robertson to recover for the wrongful death of Roosevelt Gulley.

The accident occurred about 6 a.m., April 22, 1957, on Highway 40A, some 7 or 8 miles south of Woodland. The weather was clear but it was dark. At the point of the accident the highway had two 10-foot lanes for traffic, separated by a painted white line. On the east side of the highway there was a paved shoulder some 2 or 3 feet wide and then a slope which led to a ditch. At the point where the accident occurred the road was straight and level.

The decedent was in the trucking business. He and a friend, Harold Jenkins, were driving a tractor and trailer loaded with shingles. Jenkins testified that while he was driving north on Highway 40A, a motorist drove alongside the truck and told him they were about to lose something off the truck. He then pulled over to the side of the road and parked the vehicle. The right wheels were parked about one foot off the pavement. He left the headlights on and turned on the blinker signals. There was a red blinker light on the rear of the tractor and one red blinker on each side of the rear portion of the trailer. In addition, the clearance lights on the trailer were on. After the truck was parked, Gulley took two flares and slid out the right-hand side of the tractor and went to the rear of the truck. He did not see the accident as he went across the ditch to attend to personal affairs. He heard a noise and after he turned he saw the defendant's pickup overturned in front of Gulley's vehicle. Gulley's body was between the overturned pickup and the truck. He noticed a bundle of shingles on the highway near the right rear of the trailer, which he tossed on top of the tarpaulin which covered the load. Later he found a second bundle of shingles on top of the tarpaulin.

Warren, admittedly in the course of his employment, was driving north on Highway 40A at a speed of about 45 miles

per hour. He testified at the trial that he saw a taillight about a quarter of a mile ahead. He dimmed his lights and pulled to the left to see if he could pass. He then pulled back in the northbound lane. He straddled the center line in order to pass. He did not slow down nor did he realize the truck was stopped until he was 8 or 9 feet from the truck. At that time a gust of wind caught his car and swerved it sharply to the right and he saw Gulley at the rear of the truck. Warren testified that when the gust of wind struck the car Gulley moved. He saw him, ''there was a moment there of hesitation. The fellow was standing in the middle of the road. I didn't know—I knew I couldn't cut to the left because I would hit him for sure, and I had decided to either hit the truck straight in the back or try to cut to the right and at the same moment I decided that was what I was going to do he dove back towards the truck. To me, it looked like he dove under the truck, so at that moment I decided that I could cut to the left and go around so I swerved sharply to the left and struck the left rear corner of his truck with approximately four or five inches of my cab, . . .''

A highway patrol officer testified that he found marks on the pavement which indicated the pickup had turned out and left tire marks some 42 feet south of the truck prior to the impact with the corner of the trailer. There were no tire marks indicating the pickup was going to the right. The officer took a statement from Warren which Warren himself wrote out, and in which the following appears: ''I was driving north on Alternate 40 Highway, at approximately 45 miles per hour. I approached a truck stopped in right hand lane. One man was at rear of truck.''

■ Appellants' first contention is that Gulley was contributorily negligent as a matter of law. They base this contention on the fact that Jenkins, after he was told he was going to lose his load, did not look for a parking space where he could park entirely off of the road. Appellants argue that this was negligence because the truck was parked in violation of section 582 of the Vehicle Code, which prohibits the parking of a vehicle on the traveled portion when it is practicable to park a vehicle off the highway, and that Jenkins' negligence would be imputed to Gulley.

This contention cannot be sustained. As stated in *Anthony v. Hobbie*, 25 Cal.2d 814, at page 818 [155 P.2d 826]:

''. . . But cases in which it can be said that the negligence of plaintiff contributes proximately to the accident as a matter

of law are rare. The rule has been stated in various ways in a legion of cases, that contributory negligence is not established as a matter of law unless the only reasonable hypothesis is that such negligence exists; that reasonable or sensible men could have drawn that conclusion and none other; that where there are different inferences that may be drawn, one for and one against, the one against will be followed; and that before it can be held as a matter of law that contributory negligence exists, the evidence must point unerringly to that conclusion. [Citing cases.]''

It must be borne in mind that Jenkins faced the possibility that the load was going to fall, that it was dark, and that he pulled over and parked the truck with its right wheels a foot off of the paved 3-foot shoulder. Under such circumstances the jury could find that a reasonable man would stop and park just as Jenkins did, and therefore contributory negligence as a matter of law would not be established. What was said in *Hilbert* v. *Olney*, 17 Cal.App.2d 135, at page 137 [61 P.2d 941], is applicable:

''Appellants contend that Hilbert was guilty of contributory negligence as a matter of law in parking his roadster partly on the main traveled road in the rear of the International truck, in violation of this statute, claiming that it was not impracticable for him to have placed the Chrysler altogether off the main traveled portion of the highway. Whether or not this was so would seem to have been a question of fact to be decided by the jury. . . . But, assuming that it was altogether practicable for the Chrysler to have been placed completely off the main traveled portion of the highway, it does not follow, necessarily, that deceased was chargeable with contributory negligence. 'Contributory negligence is a question of law only when the court is impelled to say that from the facts reasonable men can draw but one inference and that an inference pointing unerringly to the negligence of the plaintiff contributing to his injury.' . . .''

Appellants argue also that Warren's testimony as to Gulley's actions established Gulley's negligence as a matter of law. However the jury was not compelled to accept his testimony, and furthermore respondents were entitled to the benefit of the presumption that Gulley used due care.

Appellants' most serious contention is that the court committed reversible error in instructing on the doctrine of last clear chance. The court gave the following instruction:

"We have a rule of law known as the Doctrine of Last Clear Chance.

"In an introductory way, this may be said of it: When the facts of a case are such as to invoke the doctrine, its effect is to place liability on the person who had the last clear chance to avoid an accident and who did not do so.

"Those conditions must be found by you from the evidence after consideration of all of the evidence and a determination of what the factual situation was.

"The doctrine of Last Clear Chance may be invoked if, and only if you find from the evidence first, that the Plaintiff was in a position of danger—that should be 'decedent' of course—that the decedent was in a position of danger and by his own negligence, became unable to escape from such position by the use of ordinary care, either because it became physically impossible for him to escape or because he was totally unaware of the danger. Second, that the defendant knew that plaintiff was in a position of danger and further knew, or in the exercise of ordinary care should have known, that plaintiff was unable to escape therefrom. And third, that thereafter the defendant had the last clear chance to avoid the accident by the exercise of ordinary care but failed to exercise such last clear chance, and the accident occurred as a proximate result of such failure.

"If all the conditions just mentioned are found by you to have existed with respect to the accident in question, then you must find against the defense of contributory negligence, because under such conditions the law holds the defendant liable for any injury suffered by the plaintiff and proximately resulting from the accident, despite the negligence of the plaintiff."

Appellants do not contend that the foregoing instruction is not a correct statement of the law, but do contend most earnestly that under the evidence in the instant case no instruction on last clear chance should have been given. It is their contention that there is no evidence in the record from which it can be inferred that Warren realized the plight of Gulley in time to avoid him. The record shows that when the truck was halted the blinker lights were turned on. If the flashing lights were on, the jury could infer that Warren must have seen the flashing lights, and, if so, that he must have known that the truck was halted. The evidence disclosed that Warren turned out some 42 feet from the rear of the truck. The evidence also disclosed that the headlights on the pickup

which Warren was driving were on. Warren first observed the truck a quarter of a mile before he reached it, and he dimmed his lights. This would permit him to see a person 100 feet ahead. Gulley apparently was on the road side of the truck. Apparently he picked up a bundle of shingles and tossed it atop the tarpaulin.

Although Warren testified at the trial that he did not know the truck was stopped and did not see Gulley until a gust of wind caught his (Warren's) car and swerved it sharply to the right when he was some 8 or 9 feet from the truck, the jury was not required to believe this testimony. The traffic officer testified that the marks on the highway indicated that Warren turned out some 42 feet from the rear of the truck, and the jury could infer that Warren knew the truck was stopped and that he must have seen Gulley and the truck in time to have avoided hitting either the truck or Gulley. The jury could also infer from the evidence that Gulley was unaware of the approach of Warren.

Even though a witness testifies that he did not see the plaintiff or the plaintiff's vehicle, the doctrine of last clear chance is applicable if there is any evidence from which the jury could infer that the defendant "must have seen" the dangerous situation in time to have avoided the accident by the exercise of reasonable care.

In *Bailey* v. *Wilson*, 16 Cal.App.2d 645, at page 648 [61 P.2d 68], the court said:

"The defendant contends that there was no evidence that he knew or in the exercise of ordinary care should have known that decedent could not escape from her situation of danger. It has been said that 'where the evidence shows that the victim was standing or walking in the highway with his back turned toward the oncoming vehicle, the danger of his being' struck by the car or truck may be held to have been obvious.' (Vol. 2, Cal. Jur. Ten-Year Supp., p. 189.) We do not go so far, but at least it is a question for the fact-finder. 'Where it appears that the victim was in the path of the vehicle and plainly visible to the driver, the trier of facts may properly conclude that the driver "must have seen" him. Hence, the jury may be instructed as to the Doctrine of Last Clear Chance although there is no direct evidence that the defendant actually knew of the victim's presence in the roadway, and, indeed, although he may have testified that he did not see the victim in time to avert the collision.' (Vol. 2, Cal. Jur. Ten-Year Supp., pp. 189, 190.)"

In *Handley* v. *Lombardi*, 122 Cal.App.2d, at page 28 [9 P.2d 867], the court said:

". . . From the time that the front end of the truck was too close to the path of the oncoming automobile to stop before entering that path, until it was actually struck in the rear wheel, the driver of the truck was helpless to avoid the collision. During the same period appellant, by either applying his brakes or swerving behind the truck, could have avoided striking it. The truck was there in plain sight; appellant was sitting at the wheel of the oncoming automobile; there were no obstructions in his view. The jury was not bound to accept his testimony that he did not see the truck until just before he struck it."

In *Selinsky* v. *Olsen*, 38 Cal.2d 102, at page 105 [237 P.2d 645], the court said:

"The second factor is lacking, urges defendant, because there is no showing that defendant was aware of plaintiff's perilous position or knew he could not escape therefrom. That depends upon the view one takes of the evidence. It is true that defendant testified that he did not see plaintiff's car until he was directly behind it, when plaintiff drove his car into the line of traffic in front of him, and that plaintiff's car was in motion at the time of the impact. Other evidence shows, however, that defendant was looking straight ahead as he approached plaintiff's car and his view was unobstructed. It may be inferred therefrom that he saw plaintiff's motionless car extending into the line of traffic. (*Hoy* v. *Tornich*, 199 Cal. 545 [250 P. 565]; *Bailey* v. *Wilson*, 16 Cal.App.2d 645 [61 P.2d 68]; *Hellman* v. *Bradley*, 13 Cal.App.2d 159 [56 P.2d 607]; *Handley* v. *Lombardi*, 122 Cal.App. 22 [9 P.2d 867]; *Baird* v. *James A. Hill Const. Co.*, 138 Cal.App. 410 [32 P.2d 390]; *Galwey* v. *Pacific Auto Stages, Inc.*, 96 Cal.App. 169 [273 P. 866].) Thus we do not have a case in which plaintiff's car was in motion or suddenly appeared in defendant's path as existed in the authorities relied upon by defendant. The jury could have inferred also, that defendant knew or should have known, in the exercise of ordinary care, that plaintiff could not escape. Under the evidence most favorable to plaintiff, defendant could have seen plaintiff's car standing in the road ahead of him for a minute before the impact and thus could, by the exercise of ordinary care, have avoided the accident."

In *Mason* v. *Hart*, 140 Cal.App.2d 349, at page 352 [295 P.2d 28], we find the court saying:

"In pursuing our enquiry as to whether the record justified the giving of the instruction, it is not necessary to rely wholly on direct evidence, as legitimate inferences may properly be considered. For example, the jury was not bound to accept the defendant's statement that he did not see the plaintiff's car until 250 to 280 feet away (*Pire* v. *Gladding McBean & Co.*, 55 Cal.App.2d 108, 111, 112 [130 P.2d 143, 981] ; *Handley* v. *Lombardi*, 122 Cal.App. 22, 28 [9 P.2d 867]) for as was said, of basically similar facts in *Selinsky* v. *Olsen*, 38 Cal.2d 102, 105 [237 P.2d 645], '. . . defendant was looking straight ahead as he approached plaintiff's car and his view was unobstructed. It may be inferred therefrom that he saw plaintiff's motionless car extending into the line of traffic.' The inference could legitimately be drawn in this case under the evidence most favorable to the doctrine that defendant saw plaintiff's car at a standstill when he was at least 500 feet away from it and that although he was aware of the perilous situation, he did nothing to avoid the accident until he was within 50 to 100 feet of the point of collision. A long line of authorities in this state expressly approves this 'must have seen' or 'must have known' rule in determining whether a case properly involves all of the elements of the last clear chance doctrine. [Citing cases.]"

We do not believe that it was error to give an instruction on last clear chance. Viewing, as we must, the evidence in the light most favorable to the respondents, we believe it is fairly inferable that Warren knew that the truck was stopped and that he saw Gulley and observed his position of danger in ample time to have avoided the accident. There was ample room on the highway, it was clear and level, although it was still dark, and there was no oncoming traffic close enough to interfere with his making a wider turn to the left. The fact that the right side of his car struck the left rear corner of the truck indicates that he failed to avail himself of the opportunity to avoid the accident by making a wider turn to the left.

We agree with the following statement in the trial judge's order denying the motion for a new trial:

"However, under the uncontroverted circumstances as existing at the time and place of the accident as well as by some inconsistencies in defendant's testimony, an inference arises that defendant must have known the truck was and had been actually stopped in the manner that he claims constituted contributory negligence; and, further, under the

existing conditions of visibility, that he saw decedent prior to the time he stated and within time to afford opportunity to avoid the collision either by stopping or pulling into a passing position that would have been safe for all parties concerned. Though such inferences are of course deductions neither is unreasonable nor in my opinion the conjectural type of deduction that will not support the elements of knowledge and opportunity to avoid injury, the absence of which would preclude the application of last clear chance.''

 Appellants contend also that the court gave erroneous instructions on speed.

BAJI 144-A, which reads as follows, was given:

''The law of this state therefore does not prescribe an absolute speed limit, in terms of so many miles an hour, that was applicable at the time and place of the accident involved in this case. The law does ordain what it calls 'prima facie speed limits;' and the law says that if the speed of a vehicle upon a highway is not in excess of the prima facie limit, such speed is lawful unless clearly proved to be in violation of what is known as the basic speed law; and if the speed of a vehicle upon a highway is in excess of the applicable prima facie limit, such speed is unlawful unless proved to be *not* in violation of the basic speed law.

''However, our law further provides that proof of speed in excess of any prima facie limit shall not establish negligence as a matter of law, but that anyone who claims that a speed in excess of such a limit was negligent must, to support such a claim, prove *as a fact* that such speed was negligent in the circumstances involved.

''The prima facie speed limit that was in effect at the time and place of the accident involved in this case was fifty-five miles an hour.''

The court also gave BAJI instruction 144, which reads as follows:

''THERE ARE STATUTORY PROVISIONS WHICH REQUIRE DISCUSSION—

''The speed at which a vehicle travels upon a highway, considered as an isolated fact and simply in terms of so many miles an hour, is not proof either of negligence or of the exercise of ordinary care.

''Whether that rate of speed is a negligent one is a question of fact, the answer to which depends on all the surrounding circumstances.

"The basic speed law of this State is stated in our Vehicle Code as follows:

" 'No person shall drive a vehicle upon a highway at a speed greater than is reasonable or prudent, having due regard for the traffic on, and the surface and width of, the highway, and in no event at a speed which endangers the safety of persons or property.'

"A violation of this basic rule is negligence."

The jury was also instructed that a violation of any Vehicle Code section constitutes negligence as a matter of law, unless under all the circumstances the conduct in question was excusable, justifiable and such as might reasonably have been expected from a person of ordinary prudence.

Appellants point to the following language in the first instruction: "[I]f the speed of a vehicle upon a highway is in excess of the applicable prima facie limit, such speed is unlawful unless proved to be *not* in violation of the basic speed law." They then argue that the quoted language is contradictory and in conflict with the very next paragraph of the instruction, which says: "However, our law further provides that proof of speed in excess of any prima facie limit shall not establish negligence as a matter of law, but that anyone who claims that a speed in excess of such a limit was negligence must, to support such a claim, prove *as a fact* that such speed was negligent in the circumstances involved." Appellants then state that the court also instructed the jury that "A violation of any of the Vehicle Code sections that I have read to you constitutes negligence as a matter of law, unless, under all the circumstances surrounding the event, the conduct in question was excusable, justifiable and such as might reasonably have been expected from a person of ordinary prudence."

Appellants rely heavily on *Westberg* v. *Willde*, 14 Cal.2d 360, and quote therefrom at page 369 [94 P.2d 590]:

"However, we are of the view that the court committed prejudicial error in its instructions as to the law regulating the speed of automobiles. The court instructed the jury in the language of section 510, Vehicle Code, that 'no person shall drive a vehicle upon a highway at a speed greater than is reasonable or prudent having due regard for the traffic on, and the surface and width of, the highway, and in no event at a speed which endangers the safety of persons or property.' The court then read to the jury section 511 of the Vehicle Code, *verbatim*. This section fixes *'prima facie'* speed limits. It includes the following provisions: 'The speed of any vehicle

upon a highway in excess of any of the limits specified in this section is *prima facie* unlawful unless the defendant establishes by competent evidence that any said speed in excess of said limits did not constitute a violation of the basic rule declared in section 510 hereof at the time, place and under the conditions then existing.'

''The court gave the further instruction: 'You are instructed that by Section 513 of the Vehicle Code of the State of California, in force at the time of the collision, it is provided: ''In any civil action proof of speed in excess of any *prima facie* limit declared in Section 511 hereof at a particular time and place shall not establish negligence as a matter of law but in all such actions it shall be necessary to establish as a fact that the operation of a vehicle at such excess speed constituted negligence.'' '

''In *Akers* v. *Cowan*, 26 Cal.App.2d 694 [80 P.2d 143], and *Anderson* v. *Mothershead*, 19 Cal.App.2d 97 [64 P.2d 995], it is held that section 513 declares the rule as to burden of proof in civil cases, and that the above-quoted paragraph of section 511 is applicable only to criminal actions.

''In *Akers* v. *Cowan, supra*, the District Court of Appeal reversed the judgment for plaintiff for instructions similar to those given in the instant case. There, as in the instant case, the court read both sections 511 and 513 to the jury. The court held that the effect of reading both provisions to the jury was to give conflicting instructions. The court said:

'' 'In connection with the prima facie speed limits thus given to the jury the above instruction included the second paragraph of Section 511 of the Vehicle Code, which sets forth the rule applicable in criminal actions where a defendant is charged with traveling on a highway at a rate of speed higher than the prima facie limits set forth in that section. In such a case the burden is placed upon the defendant of proving that any speed in excess of these limits did not constitute a violation of the basic rule set forth in Section 510. A contrary rule prevails in civil actions, which rule is set forth in Section 513 of this code. The question of speed was here material and important and the giving to the jury of this wrong instruction with reference to the burden of proof in connection with that issue was plainly erroneous. (*Anderson* v. *Mothershead*, 19 Cal.App.2d 97 [64 P.2d 995].)' ''

There is merit in appellants' contention that the first paragraph of the instruction, considered alone, may be confusing as to who had the burden of proof, but we believe that the

instruction as a whole is a fair and correct statement of the law. Furthermore, as applied to the record in the instant case we do not believe that appellants suffered any prejudice from the giving of said instruction, although it may be that it was unnecessary to give it. Appellant Warren testified that he was driving the truck at a speed of about 45 miles per hour. This evidence was uncontradicted, and it is not contended by anyone that his speed was in excess of 45 miles per hour. The prima facie speed limit, as stated in the instruction, was 55 miles per hour, and the statements in the instruction that the speed of a vehicle in excess of the prima facie speed limit is unlawful unless proved to be not in violation of the basic speed law and that the violation of any Vehicle Code section is negligence as a matter of law, etc., were not prejudicial.

The cases of *Westberg* v. *Willde, supra,* and *Akers* v. *Cowan, supra,* are clearly distinguishable from the instant case. At the time those two cases were decided the prima facie speed limit was 45 miles per hour. In *Westberg* v. *Willde* there was testimony that the Ford truck of defendant was traveling 50 miles per hour, which was in excess of the prima facie speed limit then in effect. In *Akers* v. *Cowan* the defendant testified that he drove through an intersection in a residential district at a speed between 25 and 30 miles per hour, when the prima facie speed limit was 25 miles per hour. Therefore in both of those cases there was evidence that defendant was exceeding the prima facie speed limit and the instructions were held to be prejudicial.

We believe that to hold that the instructions on speed given in the instant case constituted reversible error would be to fly in the face of section 4½ of article VI of our state Constitution, which provides: ''No judgment shall be set aside, . . ., on the ground of misdirection of the jury, . . ., unless, after an examination of the entire cause, including the evidence, the court shall be of the opinion that the error complained of has resulted in a miscarriage of justice.''

Appellants' final contention is that the trial court after giving instructions that no person shall park a vehicle upon the main traveled portion of a highway when it is practicable to park such vehicle off such part of said highway and instructions proffered by appellants in which the duty of the person parking the vehicle was more fully explained defined practicable as meaning ''feasible-possible or capable of performance without undue or unreasonable effort or hazard.'' Appellants contend that this definition is contrary to the law,

since it would excuse the decedent if he would have been put to undue effort to find a parking space which would permit him to park off of the roadway. In the instant case the fact that the load of shingles was in danger of being lost was a factor to be considered, since to have allowed the shingles to have remained would have violated the provisions of section 601, subdivision (b) of the Vehicle Code.

All of the surrounding circumstances were to be considered by the jury, and it was for the jury to determine whether it was practicable for Gulley to park his tractor and trailer as he did. We do not believe that the jury was misled by the instructions.

The instant case was tried by able and experienced counsel and was presided over by an able trial judge who after full hearing denied appellants' motion for a new trial. Taking the record as a whole, and bearing in mind the plain and meaningful words of the Constitution hereinbefore quoted, we are satisfied that even if appellants are correct in some of their contentions of error no miscarriage of justice has resulted.

The judgment is affirmed.

Van Dyke, P. J., and Warne, J. pro tem.,* concurred.

A petition for a rehearing was denied November 13, 1959, and appellants' petition for a hearing by the Supreme Court was denied December 10, 1959. McComb, J., was of the opinion that the petition should be granted.

---

*Assigned by Chairman of Judicial Council.